Argued and submitted November 25, 2008, affirmed September 2, 2009

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## NANCY BAKER-KROFFT,
*Defendant-Appellant.*

Marion County Circuit Court
06C53978; A135939

216 P3d 335

Erica Herb, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Inge D. Wells, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Ortega, Judge, and Carson, Senior Judge.

LANDAU, P. J.

**LANDAU, P. J.**

Defendant was convicted of criminal mistreatment in the second degree for withholding necessary and adequate physical care from her 11-year-old son, based on the condition of her home. ORS 163.200. She appeals, arguing that the trial court should have granted her motion for a judgment of acquittal because the state failed to prove that her son was significantly likely to be seriously harmed by the conditions of the home. We affirm.

The relevant facts are undisputed. Hedrick, a compliance officer with the City of Salem's public health authority, responded to a report by a patrol officer about the condition of defendant's home. Defendant lived in the residence with her husband and their 11-year-old son. When Hedrick arrived to inspect the home, defendant was at work, but her husband and son were there. During his inspection, Hedrick observed what he considered to be unsanitary conditions, in that there was clutter built up throughout the home. In some places, the clutter was piled six feet high. Although the home smelled musty and mildewy, there were no signs of rodents or other pests.

Hedrick also observed several fire hazards. The massive amount of clutter piled up throughout the home—boxes of paper and clothing—was all flammable. Hedrick considered the home to have a very heavy "fuel load." Some of the clutter was near electrical outlets that were overloaded, which he confirmed by touching the cords and outlets and feeling that they were warm to the touch. There were no working smoke alarms, and, given the amount of clutter in the home, no one could have escaped in a timely manner in the case of a fire. Hedrick concluded that the home violated the local public health ordinance and posted the property as a health hazard. He then cited defendant and her husband for public nuisance.

Because he believed that the conditions of the home were unsafe for an 11-year-old, Hedrick also called the police. Detectives Carney and McCarley responded, and, with defendant's husband's consent, they walked through the home and took photographs. As had Hedrick, the detectives observed fire hazards: An extension cord ran from the house out to a

chicken coop in the backyard; the cord was providing electricity for a space heater that was sitting on top of stacks of straw. In a back bedroom, an iron was sitting on an ironing board; it was partially plugged into an electrical outlet but was not turned on.

When the detectives entered the kitchen, they observed that clutter covered every flat surface, although one side of the kitchen sink was available for use. The refrigerator was stocked with food, but, when the detectives opened the door, they smelled an odor of sour milk. The garbage can was overflowing. The doors to the garage and to the backyard were blocked by clutter.

The detectives then went upstairs, where defendant's son's bedroom and bathroom are located. The stairway railing was loose. As it was throughout the rest of the house, clutter covered every surface in his bedroom. His bathroom was also filled with clutter, and the bathtub was being used for storage. He was able, however, to access the toilet, sink, and shower.

After they investigated the home, the detectives called defendant and asked her to return to her home. When she arrived, they arrested her and her husband for criminal mistreatment of their son. There was nothing about their son's appearance that caused the detectives concern; the arrest was based solely on the condition of the home.

Defendant and her husband were jointly charged with one count of second-degree criminal mistreatment for "withhold[ing] necessary and adequate physical care." Defendant's husband pleaded guilty to the charge, and he agreed to testify on behalf of the state at defendant's trial.

The case was tried to a jury. The state's witnesses included Hedrick, Carney, McCarley, and defendant's husband, who testified to the foregoing facts. At the close of the state's case-in-chief, defendant moved for a judgment of acquittal, arguing that the state's evidence was insufficient to prove that the condition of her home constituted withholding necessary and adequate physical care. The trial court denied the motion. The jury found defendant guilty as charged.

■        On appeal, defendant assigns error to the trial court's denial of her motion for a judgment of acquittal. She maintains that the condition of her home did not constitute "withhold[ing] necessary and adequate physical care" because, in her view, the legislature intended only to criminalize care by a caregiver "that poses a significant likelihood of serious harm" to the dependent person. She insists that the state failed to prove that the condition of her home posed a significant likelihood of serious harm to her son, given that the home was free of pests and controlled substances and that he was well fed and appropriately clothed.

The state disputes that the legislature intended to prohibit only care that poses a significant likelihood of serious harm. Defendant's proposed construction of ORS 163.200, the state argues, inserts a standard that simply is not there. Instead, the state asserts, that statute is broadly worded and prohibits even less egregious conduct—that is, the statute "requires that a [caregiver] attend to the safety or well-being of [the dependent person] by providing the things that cannot be done without * * * in a 'fully sufficient' manner." In the state's view, the condition of defendant's home demonstrated that she failed in that regard. In any event, the state contends, the high risk of fire and the inability to escape in a timely manner demonstrated that defendant's care did in fact pose a significant likelihood of serious harm to her son.

■        The parties' dispute centers on the meaning of "withholds necessary and adequate * * * physical care," as used in ORS 163.200. In construing a statute, we examine the statutory text in its context, any relevant legislative history, and, if necessary, relevant canons of construction, to ascertain the intention of the legislature that enacted it. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). In our examination of the statutory text, we give terms that are undefined in the statute their plain and ordinary meanings. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). We also consider any prior judicial construction of the statute. *See State v. Murray*, 343 Or 48, 52, 162 P3d 255 (2007).

We begin with the statute's text. ORS 163.200 provides, in part:

"(1)   A person commits the crime of criminal mistreatment in the second degree if, with criminal negligence and:

"(a)   In violation of a legal duty to provide care for another person, the person withholds necessary and adequate food, physical care or medical attention from that person[.]"

In turn, a person acts with "criminal negligence" when the person "fails to be aware of a substantial and unjustifiable risk that * * * the circumstance exists. The risk must be of such nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation." ORS 161.085(10).

Defendant does not dispute that she had a legal duty to provide care for her son. *See* ORS 163.200(3) ("As used in this section, 'legal duty' includes but is not limited to a duty created by familial relationship, court order, contractual agreement or statutory or case law."). She also appears to acknowledge that, if the condition of the home does constitute withholding necessary and adequate physical care, she acted with criminal negligence.

The only issue, then, is the meaning of the phrase "withholds necessary and adequate * * * physical care." Because those terms are not defined by the statute, we give them their plain and ordinary meanings. A person "withholds" something when he or she "hold[s] back : keep[s] from action" or "desist[s] or refrain[s] from granting, giving, or allowing." *Webster's Third New Int'l Dictionary* 2627 (unabridged ed 2002); *accord State v. Schneider*, 229 Or App 199, 207-08, 211 P3d 306 (2009). The ordinary meaning of "care," as relevant to its use in ORS 163.200(1)(a), is "serious attention; *esp* : attention accompanied by caution, pains, wariness, personal interest, or responsibility" and "CHARGE, SUPERVISION, MANAGEMENT : responsibility for or attention to safety and well-being." *Webster's* at 338 (italics and capitalization in original). The type of care required by the statute, however, is "physical" care, which means "of or relating to the body." *Id.* at 1706. Therefore, a caregiver violates ORS 163.200(1)(a) if he or she refrains from attending to the dependent person's bodily safety and well-being. We previously have held that

"[t]hat attention necessarily includes attention to dangers in the body's environment." *State v. Damofle/Quintana*, 89 Or App 620, 624, 750 P2d 518, *rev den*, 305 Or 671 (1988).

The phrase "physical care," as used in ORS 163.200, encompasses a broad range of conduct. *See Damofle/Quintana*, 89 Or App at 625 (acknowledging the breadth of that statute but nevertheless rejecting a constitutional vagueness challenge because its wording is sufficiently clear to provide fair notice as to the conduct it prohibits). The legislature included a limiting adjective phrase, however—that is, the statute prohibits withholding physical care that is "necessary and adequate." "Necessary," as used in this context, means physical care "that cannot be done without : that must be done or had : absolutely required : ESSENTIAL, INDISPENSABLE." *Webster's* at 1511 (capitalization in original). In turn, "adequate" means physical care that is "equal to, proportionate to, or fully sufficient for a specified or implied requirement; *often* : narrowly or barely sufficient : no more than satisfactory." *Id.* at 25 (italics in original).

■ Therefore, based on the plain and ordinary meanings of the terms, and our reasoning in *Damofle/Quintana*, a caregiver "withholds necessary and adequate * * * physical care" in violation of ORS 163.200 when he or she fails to meet sufficiently the essential needs of the dependent person with respect to bodily safety and well-being, bearing in mind that that includes attention to the dangers in the body's environment. (The parties cite no legislative history that relates to the legislature's intended meaning of the disputed statutory phrase, and we have found none.)

With that construction in mind, we turn to the evidence in this case to determine whether, viewed in the light most favorable to the state, it was sufficient for a rational factfinder to find all the elements of the offense beyond a reasonable doubt. *See State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998) (stating the standard for reviewing a denial of a motion for a judgment of acquittal).

We begin with the evidence of a present risk of fire in the home, because it is dispositive. The home was filled with so many piles of flammable material that Hedrick—concerned about such a heavy "fuel load" and that some of the

clutter was near overloaded electrical outlets—deemed the home to be a health hazard. Furthermore, the chicken coop in the backyard contained a space heater placed on top of stacks of straw, which is even more highly flammable material. There was also no mechanism for warning the home's occupants in the event of a fire; the home had no working smoke alarms. Even if there were, the evidence established that the amount of clutter was so massive that it would impede any timely escape. In fact, two of the doors from the house—one that led to the garage and another to the backyard—were completely blocked with clutter, preventing anyone from using them as a means of escape. We conclude that that evidence of fire hazards was sufficient for the jury to find that defendant failed to give sufficient attention to her son's bodily safety and well-being and that doing so constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation.

Because we have concluded that the evidence of fire hazards, on its own, was sufficient to support defendant's conviction, we do not need to determine whether the evidence of other conditions in the home was adequate to demonstrate that defendant withheld necessary and adequate physical care.

The trial court did not err in denying defendant's motion for a judgment of acquittal.

Affirmed.