Argued and submitted November 25, 2008, reversed September 9, 2009

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ELIZABETH DOWTY,
*Defendant-Appellant.*

Marion County Circuit Court
06C53814; A135936 (Control)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

STEVEN WAYNE DOWTY,
*Defendant-Appellant.*

Marion County Circuit Court
06C53823; A135938

216 P3d 911

Erica Herb, Deputy Public Defender, argued the cause for appellants. With her on the brief was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

M. Ann Boss, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy

Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Ortega, Judge, and Carson, Senior Judge.

LANDAU, P. J.

**LANDAU, P. J.**

In this consolidated criminal appeal, defendants are spouses who were each convicted under ORS 163.205 of two counts of first-degree criminal mistreatment (one for each of their two young children) based on the condition of their home. The issue in this case is whether the evidence is sufficient to demonstrate that defendants knowingly withheld "necessary and adequate physical care" from their children. We reverse.

Unless noted otherwise, the relevant facts are undisputed. Defendants Elizabeth and Steven Dowty live together with their two daughters, ages five and two, and Elizabeth's 18-year-old son, Nicholas. Early one morning, at 2:40 a.m., several police officers responded to defendants' home based on a 9-1-1 call by Steven reporting that Nicholas had pulled a knife on Elizabeth. When the officers arrived, Elizabeth answered the door and told them that everything had calmed down. The officers entered the home anyway to ensure that no one was injured.

The house contained so much clutter that the officers had to walk single file to enter through the front door. The clutter included boxes and extra pieces of furniture, including a headboard leaning against a wall and a brand new television screen that had been knocked over. Maneuvering through the home was limited to a narrow path from room to room. The odor throughout the house was "pungent," "humid," and "dank." Due to the smell, one officer had to breathe through his mouth, although doing so made his throat hurt.

The kitchen was also cluttered. There were items on every flat surface, including cardboard and plastic containers on the stovetop and two large kitchen knives and a hammer lying loose on the counter. The sink was full of dirty dishes, and a fly was buzzing around. The linoleum floor was sticky. Because of her doctor's orders after a recent surgery on one of her fingers, Elizabeth said that she had not cleaned the kitchen in a week.

According to defendants, they always used a baby gate to obstruct the entrance to the kitchen because they

were concerned about hazards and did not want the young children in the kitchen unattended. Although they insist that the gate was in place when the officers walked through the home, the officers claim that they never saw it.

Near the kitchen was Elizabeth's bedroom, which at that point was shared by their daughters because Nicholas had recently moved in with the family and was staying in the girls' bedroom. The daughters were asleep when the officers inspected the bedroom. Although the home had a functioning heating system, Elizabeth's bedroom had no heat vents. Defendants had purchased a space heater for the bedroom, placing it on a heat-resistant cutting board to raise it off the floor. The space heater had a sensor that would sound an alarm if surrounding items got too hot. When the officers walked through the room, the heater was operating with plastic bags and clothing nearby. Near the sleeping children was an unlocked case full of prescription pill bottles, all secured with childproof caps.

In Steven's bedroom upstairs, the officers saw another operating space heater, also equipped with a temperature sensor and alarm, but also with an automatic shut-off feature. A blanket was nearby. There were more prescription pill bottles that would be within reach of the young children, although those bottles too were secured with childproof caps.

Despite the cluttered condition of the home, the bathrooms were all functioning and clean, although the downstairs bathroom had a garbage can that was overflowing with diapers.

The young children remained asleep the entire time that the officers were in the home.

The officers arrested defendants. They were subsequently charged by indictment with two counts each of first-degree criminal mistreatment for "knowingly withhold[ing] necessary and adequate physical care" from their two daughters.

Defendants were tried jointly to the court. At the close of the state's case, each defendant moved for a judgment of acquittal. They argued that the state had failed to prove that the condition of their home constituted the withholding

of necessary and adequate physical care. The court denied the motions. Defendants then testified in their own defense. After taking the case under advisement, the court found defendants guilty as charged. The court made no factual findings or credibility determinations, either in writing or stated in the record.

On appeal, defendants argue that the trial court erred in denying their motions for a judgment of acquittal. In their view, the condition of their home did not constitute the withholding of necessary and adequate physical care within the meaning of ORS 163.205 because there was no "significant likelihood of serious harm" to the children. To avoid liability under the statute, defendants assert, it is sufficient to provide "the care that is adequate and essential to protect children from 'dangers,' not from unlikely harms, or likely but insignificant bumps or scrapes." In other words, they contend, "[c]are that is not needed to protect children from a likelihood of serious physical harm is not 'necessary' to their physical well-being, and a lesser amount of care is 'adequate' under the statute." Their care, defendants argue, met that standard.

The state responds that the statute sets a higher standard for caregivers than that asserted by defendants. According to the state, it is not required to prove that the care poses a "significant likelihood of serious harm" to the dependent person. In any event, the state asserts, even if that were the standard, the evidence was more than sufficient to meet that standard.

When reviewing a denial of a motion for a judgment of acquittal, we view the evidence in the light most favorable to the state to determine whether a rational factfinder, making reasonable inferences, could have found all the elements of the offense beyond a reasonable doubt. *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998). In considering the sufficiency of the evidence, we consider all the evidence, including any evidence adduced at trial by a defendant after the court ruled on the motion for a judgment of acquittal. *State v. Gardner*, 231 Or 193, 195, 372 P2d 783 (1962).

ORS 163.205 provides, in part:

"(1)   A person commits the crime of criminal mistreatment in the first degree if:

"(a)   The person, in violation of a legal duty to provide care for another person, or having assumed the permanent or temporary care, custody or responsibility for the supervision of another person, intentionally or knowingly withholds necessary and adequate food, physical care or medical attention from that other person[.]"

" 'Knowingly' or 'with knowledge,' when used with respect to conduct or to a circumstance described by a statute defining an offense, means that a person acts with an awareness that the conduct of the person is of a nature so described or that a circumstance so described exists." ORS 161.085(8). "[A] person is not guilty of an offense unless the person acts with a culpable mental state with respect to each material element of the offense that necessarily requires a culpable mental state." ORS 161.095(2).

As we have noted, in this case, the state's theory for charging defendants was that they "knowingly withh[e]ld necessary and adequate physical care" from their two young children. Defendants do not dispute that they had a legal duty to provide care to their children. *See* ORS 163.305(2)(d) (" 'Legal duty' includes but is not limited to a duty created by familial relationship, court order, contractual agreement or statutory or case law."). Thus, the only issue is whether the evidence is sufficient to show that they "knowingly withh[eld] necessary and adequate * * * physical care" within the meaning of ORS 163.205(1)(a).

In *State v. Baker-Krofft*, 230 Or App 517, 216 P3d 335 (2009), we affirmed a defendant's conviction for second-degree criminal mistreatment, on the ground that the defendant, acting with criminal negligence, withheld necessary and adequate physical care from her 11-year-old son. The case serves as a useful reference point for our evaluation of the evidence in this case. In *Baker-Krofft*, we held that a caregiver "withholds necessary and adequate * * * physical care" from the dependent person when the caregiver "fails to meet sufficiently the essential needs of the dependent person with

respect to bodily safety and well-being." *Id.* at 523. We determined that, in that case, the evidence of fire hazards—that is, the high present risk of fire given electrical cords and outlets that were warm to the touch and near piles of flammable materials, the lack of working smoke alarms, and so much clutter that no one could escape the house in a timely manner in case of a fire—was sufficient to support the defendant's conviction for second-degree criminal mistreatment under ORS 163.200. *Id.* at 523-24.

In this case, as in *Baker-Krofft*, the state relies on what it characterizes as evidence of fire hazards. The state points to the following evidence in that regard: that there were plastic containers and cardboard on the stovetop; that two of the bedrooms had operating space heaters near flammable material; and that the home was so cluttered that no one could escape in a timely manner if a fire occurred.

Unlike the evidence in *Baker-Krofft*, however, the evidence in this case does not establish that there was a *present* risk of fire. The stove was not turned on, and the space heaters were equipped with temperature sensors that would sound an alarm or turn them off if the surrounding materials got too hot. Furthermore, in *Baker-Krofft*, the clutter was relevant precisely because of the present risk of fire. In this case, however, without evidence that the clutter affected the children's bodily safety and well-being in some other way, the clutter on its own does not constitute "withhold[ing] necessary and adequate * * * physical care."

The state also relies on evidence of prescription pill bottles within the physical reach of the children. There is no evidence, however, that the children had access to the pills themselves; it is undisputed that the bottles were secured with childproof caps.

Finally, the state relies on evidence of kitchen knives and a hammer lying loose on the kitchen counter. Defendants acknowledge that the kitchen contained hazards for the children. In fact, that was the reason they used a baby gate to block the entrance to the kitchen. On the night of the arrest, however, viewing the evidence in the light most favorable to the state, the baby gate was not actually blocking the entrance to the kitchen.

The question, then, is whether failing to protect the children from those potential hazards in the kitchen constitutes withholding physical care that is "necessary and adequate." Items such as large knives and hammers are capable of inflicting serious bodily harm to a young child; thus, it would seem that protecting the child from that danger is part of providing "necessary and adequate" physical care. Nevertheless, the same is true of a number of items in every home, which inevitably includes some inherent dangers. We cannot say that, in enacting ORS 163.205, the legislature likely intended to criminalize physical care (like that in this case) simply because it does not safeguard against every possible danger.

In sum, the evidence does not establish that defendants knowingly withheld necessary and adequate physical care from their children. Accordingly, the trial court erred in denying their motions for a judgment of acquittal.

Reversed.