Argued and submitted May 19, at Ashland High School, Ashland, Oregon; in *State v. Baker-Krofft*, S057958, decision of Court of Appeals and judgment of circuit court reversed; in *State v. McCants/Walker*, S058148, decision of Court of Appeals and judgment of circuit court reversed August 19, 2010

STATE OF OREGON,
*Respondent on Review,*

*v.*

NANCY BAKER-KROFFT,
*Petitioner on Review.*

(CC 06C53978; CA A135939; SC S057958 (Control))

STATE OF OREGON,
*Respondent on Review,*

*v.*

TIMOTHY LEE McCANTS,
*Petitioner on Review.*

(CC 06C44334; CA A134846 (Control))

STATE OF OREGON,
*Respondent on Review,*

*v.*

CYNTHIA GENEVA WALKER,
*Petitioner on Review.*

(CC 06C45185; CA A134848; SC S058148)

239 P3d 226

Erica Herb, Deputy Public Defender, Salem, argued the cause and filed the brief for petitioner on review Baker-Krofft. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Ryan T. O'Connor, Deputy Public Defender, Salem, argued the cause and filed the brief for petitioners on review McCants and Walker. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Inge D. Wells, Senior Assistant Attorney General, Salem, argued the cause and filed the briefs for respondent on review

State of Oregon. With her on the briefs were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

KISTLER, J.

**KISTLER, J.**

The question in these two cases is what constitutes "withhold[ing] necessary and adequate * * * physical care" within the meaning of ORS 163.205 and ORS 163.200, two statutes that prohibit first- and second-degree criminal mistreatment. In both cases, defendants had children under their care who were well fed and healthy but who lived in homes with potential safety hazards. Following its precedent, the Court of Appeals held that creating or failing to correct potential safety hazards in the home constitutes "withhold[ing] * * * physical care" within the meaning of ORS 163.200 and ORS 163.205. *State v. Baker-Krofft*, 230 Or App 517, 523-24, 216 P3d 335 (2009); *State v. McCants/Walker*, 231 Or App 570, 584, 220 P3d 436 (2009). We allowed defendants' petitions for review and now reverse the Court of Appeals decisions.

We summarize the facts briefly to put the legal issue in context.[1] In both cases, defendants were arrested and indicted for "withhold[ing] necessary and adequate physical care" from their dependent children. In both cases, defendants' children, who ranged in age from five and one-half months to 11 years old, appeared healthy and well fed. Defendants were arrested "based solely on the condition of the home." *Baker-Krofft*, 230 Or App at 520; *accord McCants/Walker*, 231 Or App at 572. The conditions in both homes were similar. Both homes were unusually full of clutter in a way that posed potential safety hazards. In *Baker-Krofft*, the house posed specific fire hazards (such as a space heater sitting on a pile of straw in a chicken coop in the backyard), did not contain working fire alarms, and was so full of clutter that it would have been difficult to escape from any fire. 230 Or App at 520, 524. In *McCants/Walker*, the home was filled with debris, which included some small items on the floor that posed a potential choking hazard to the young children who lived in the home. 231 Or App at 573.

---

[1] Because these cases arise from defendants' motions for judgments of acquittal, we state the facts in the light most favorable to the state. *State v. Casey*, 346 Or 54, 56, 203 P3d 202 (2009). The facts are set out more fully in the Court of Appeals decisions.

In each case, defendants moved for a judgment of acquittal at the close of the evidence, the trial court denied the motion, and the trier of fact found that defendants had "with[eld] necessary and adequate physical care" from their children.[2] Defendants appealed from the resulting judgments of conviction, and the Court of Appeals affirmed. In both cases, the Court of Appeals relied on its precedent for the proposition that "physical care" under ORS 163.200 and ORS 163.205 " 'necessarily includes attention to dangers in the body's environment.' " *Baker-Krofft*, 230 Or App at 523 (quoting *State v. Damofle / Quintana*, 89 Or App 620, 624, 750 P2d 518 (1988)); *accord McCants / Walker*, 231 Or App at 580. In *Baker-Krofft*, the Court of Appeals held that the "present risk of fire in the home"—the piles of flammable material that presented a heavy fuel load and the space heater placed on top of straw in a chicken coop in the backyard as well as the lack of smoke alarms—was "sufficient for the jury to find that defendant failed to give sufficient attention to her son's bodily safety and well-being." 230 Or App at 523-24. In *McCants / Walker*, the court noted the growing number of cases involving ORS 163.200 and ORS 163.205 and set out several factors to be used in "the assessment of the legal sufficiency of asserted 'dangers in the body's environment.' " 231 Or App at 581-83. After considering those factors, the court held that "[t]he trier of fact could reasonably infer that there were multiple choking hazards easily accessible to children for an extended period of time and that defendants, notwithstanding their awareness of the attendant risk, had done little, if anything, to rectify that condition." *Id.* at 584.

We allowed defendants' petitions for review to consider whether creating or failing to correct a safety hazard constitutes "withhold[ing] necessary and adequate * * * physical care" within the meaning of ORS 163.200 and ORS 163.205. We begin with the wording of those statutes. ORS 163.200(1) provides, in part:

"A person commits the crime of criminal mistreatment in the second degree if, with criminal negligence and:

---

[2] In *Baker-Krofft*, defendant was convicted of violating ORS 163.200. In *McCants / Walker*, defendants were convicted of violating ORS 163.205.

"(a) In violation of a legal duty to provide care for another person, the person withholds necessary and adequate food, physical care or medical attention from that person * * *."

ORS 163.205(1) provides, in part:

"A person commits the crime of criminal mistreatment in the first degree if:

"(a) The person, in violation of a legal duty to provide care for another person, or having assumed the permanent or temporary care, custody or responsibility for the supervision of another person, intentionally or knowingly withholds necessary and adequate food, physical care or medical attention from that other person * * *."

The state must prove three elements to establish a violation of those statutes: (1) the defendant acted with the requisite mental state; (2) the defendant had a duty to provide care for a person; and (3) the defendant "withh[eld] necessary and adequate food, physical care or medical attention" from that person.[3]

The issue that these cases pose is narrow. Defendants do not argue that there was insufficient evidence to find that they either owed a duty to provide care for their children or that they lacked the requisite mental state. Nor were defendants charged with withholding food or medical attention. Rather, defendants were charged with withholding "necessary and adequate physical care" from their children and can be convicted only of that charge. See State v. Schoen, 348 Or 207, 213 n 2, 228 P3d 1207 (2010) (noting that a defendant who is charged with "tamper[ing]" with property cannot be found guilty of "interfering" with property, when those words provided alternative definitions of the same criminal act). The question in these cases accordingly reduces to

---

[3] The criminal mistreatment statutes differ in two respects, neither of which bears on the issue on review. The second-degree criminal mistreatment statute requires proof of criminal negligence and applies only to persons who have a legal duty to provide care for another. ORS 163.200(1). The first-degree statute, by contrast, requires proof that the defendant acted knowingly or intentionally, and it applies not only to persons who have a legal duty to provide care for another but also to persons who "hav[e] assumed the permanent or temporary care, custody or responsibility for the supervision of another person." ORS 163.205(1)(a).

whether creating or failing to correct potential fire and choking hazards constitutes "withhold[ing] necessary and adequate * * * physical care" within the meaning of ORS 163.200 and ORS 163.205.

On that point, defendants argue that "necessary and adequate * * * physical care" means "attention that is applied to the body and is sufficient to satisfy the dependent's essential bodily needs." Defendants reason that the prohibition against withholding "physical care" does not include a prohibition against creating or failing to correct "potential dangers in the dependent's environment." The state, on the other hand, interprets the statutory prohibition more broadly. It contends that "[t]he plain meaning of 'withholding necessary and adequate physical care' is to fail to meet the essential needs of a dependent person * * * with respect to bodily safety and well-being." The state reasons that potential environmental dangers are covered by the statutes because "[k]eeping a child safe necessarily includes protecting him from dangers in his environment."

■ In analyzing the parties' arguments, we begin with the statutory text. The operative text of both statutes makes it a crime to "withhol[d] necessary and adequate * * * physical care." Because the legislature has not defined those terms, we look to the dictionary to determine their ordinary meaning. *See State v. Briney*, 345 Or 505, 511, 200 P3d 550 (2008). We begin with the phrase "physical care." In this context, to provide "care" means to "provide for or attend to needs or perform necessary personal services (as for a patient or a child)." *Webster's Third New Int'l Dictionary* 338 (unabridged ed 2002).[4] The word "physical" modifies "care." "Physical" means "of, or relating to the body." *Id.* at 1706. Reading those two definitions together, we conclude that

---

[4] Care is both a noun and a verb. *See Webster's* at 338 (defining both forms of the word). Care, used as a noun, means "CHARGE, SUPERVISION, MANAGEMENT: responsibility for or attention to safety and well being ‹under a doctor's ›." *Id.* Care, used as verb, means "to give care" or to "provide for or attend to needs or perform necessary personal services (as for a patient or a child)." *Id.* The former definition focuses on the relationship between the caregiver and the recipient, while the latter focuses on the nature of the care that is given or, in these statutes, withheld. Because the latter definition comes closer to the way in which the legislature used the word, we quote that definition in text.

providing "physical care" means providing for or attending to another person's bodily needs.

Another statutory term is relevant. ORS 163.200 and ORS 163.205 impose liability only when a person with a duty to provide care "withholds" necessary and adequate physical care "from th[e] person" to whom the duty is owed. "Withhold" means:

> "to desist or refrain from granting, giving, or allowing
> : keep in one's possession or control : keep back ‹distribute among the youngsters all blankets and provisions and gear, ~ ing for myself only a canteen—Hodding Carter›
> ‹~ permission›."

*Webster's* at 2627. As the text of the statutes makes clear, the statutes apply only if the person with the duty to provide care withholds or keeps back food, physical care, or medical attention "from th[e dependent] person"; that is, the statutes rest on the premise that the actor keeps back something (food, physical care, or medical attention) from a person who would not otherwise be able to obtain it for him or herself.

■ Reading those definitions together, we conclude that a defendant withholds physical care from a dependent person when the defendant keeps back from the dependent person those physical services and attention that are necessary to provide for the dependent person's bodily needs. As noted, the state argues that the statutes reach a broader range of conduct. It notes that one definition of "care" is "responsibility for or attention to safety and well being ‹under a doctor's ~›." *Webster's* at 338. Focusing on the use of the word "safety" in that definition, the state reasons that "[k]eeping a child safe necessarily includes protecting him from dangers in his environment." It follows, the state concludes, that creating or failing to correct any and all dangers to the child's safety comes within the prohibition against withholding necessary and adequate physical care.

The state's interpretation is difficult to square with the statutes' texts in three respects. First, it converts the verb "withhold" into "create" or "fail to correct." Second, it converts a prohibition against withholding specific services (food, physical care, and medical attention) into a prohibition

against creating any and all risks to a dependent person's health. Third, it converts a statute that prohibits a present deprivation of services or attention into one that prohibits creating a risk of future harm. To be sure, presently withholding necessary and adequate physical care can impair a child's health and safety. But it does not follow that every risk of future harm to a child's health or safety that a parent either creates or fails to correct constitutes withholding physical care. The former set of risks is far broader than the latter, but the statutory prohibition extends only to the latter set (or subset) of risks.

Two contextual clues reinforce that conclusion. ORS 163.200 and ORS 163.205 prohibit withholding necessary and adequate "food" and "medical attention," as well as physical care. Both food and medical attention are essential to maintain bodily health. Grouping physical care together with food and medical attention suggests that the legislature understood that physical care was similarly limited to those essential physical services and attention that are necessary to provide for a dependent person's bodily needs. *Cf. White v. State Ind. Acc. Com.*, 227 Or 306, 317, 362 P2d 302 (1961) (under the doctrine of *noscitur a sociis*, "general words, found in a statute, may take the color and meaning of words of specific connotation").

Additionally, when the legislature enacted ORS 163.200 and ORS 163.205 in 1973, it did so against a backdrop of civil statutes that authorized juvenile courts to take jurisdiction over children "[w]hose * * * condition or circumstances are such as to endanger [their] own welfare" and make them wards of the court. ORS 419.476(1)(c) (1971); *see Stevens v. Czerniak*, 336 Or 392, 401, 84 P3d 140 (2004) (context includes " 'the preexisting common law and the statutory framework within which the law was enacted' ") (quoting *Denton and Denton*, 326 Or 236, 241, 951 P2d 693 (1998)). In enacting those civil statutes, the legislature sought to protect a child's safety while working to reunite and reintegrate the child, if possible, into the parents' home. *See, e.g.*, ORS 418.485 (1971) (declaring the policy of the state "to strengthen family life and to insure the protection of all children either in their own homes or in other appropriate care"); ORS 419.523(2) (1973) (providing for termination of parental

rights only when the "integration of the child into the home of the parent or parents is improbable in the foreseeable future due to conduct or conditions not likely to change").

Under those statutes, if parents either created unsafe conditions in the home or failed to correct those conditions, as defendants did here, the juvenile court could take jurisdiction over the children to protect their safety while the Children's Services Division, as the agency was then known, worked with the parents to correct those conditions so that the family could be reunited. The state's position—that the legislature also intended to criminalize all conduct that endangers a child's safety—does not readily square with the policy expressed in those civil statutes.

We recognize that those civil and criminal statutes may overlap in some circumstances. For example, if a parent intentionally withheld necessary and adequate food from his child, that conduct could give rise both to juvenile court jurisdiction and also to criminal liability. As our discussion of the text demonstrates, however, we do not think that the legislature intended that the phrase "withhold[ing] necessary and adequate * * * physical care" would sweep within it all the safety risks within a home that can give rise to juvenile court jurisdiction. Rather, it left the sort of risks at issue in these cases to the civil law, with its salutary focus on protecting the child while working to reunite the family.

We also look to legislative history to confirm the text and context. *See State v. Gaines*, 346 Or 160, 172, 206 P3d 1042 (2009) (looking to legislative history to confirm text). As originally proposed in 1973, Senate Bill (SB) 780 made anyone who "cruelly mistreats or maltreats any person over the age of 65 years" guilty of a misdemeanor. Bill File, Special Committee on Aging, SB 780 (1973). Senator Fadeley introduced the bill in response to reports of nursing home abuse and to protect the residents of those facilities. Minutes, Special Committee on Aging, Apr 9, 1973, 1. Commenting on the bill as originally proposed, he explained that the "bill doesn't go as far as the child neglect bill [enacted in 1971 did]." Tape Recording, Special Committee on Aging, SB 780,

Apr 9, 1973, Tape 4, Side 2 (statement of Sen Edward Fadeley). He distinguished SB 780 from the child neglect laws, which he described as making it a crime to leave a child

> "unattended at any place where it may be likely to endanger [the child's] welfare. We weren't going to that. We were talking about some action or nonaction * * * that resulted in cruel deprivation or the undue threat of fear."

*Id.* As Senator Fadeley explained, SB 780 was intended to focus more narrowly on withholding food and other necessities from seniors. *Id.*

The bill, as drafted, raised vagueness concerns, and Senators Fadeley and Carson undertook to redraft the bill. Their work produced a bill that is substantially in the same form as the wording in the current statutes. As redrafted, the bill applied to dependent persons generally while specifying more particularly the actions that the bill prohibited— withholding necessary and adequate food, physical care, and medical attention. The Senate committee considered the bill at its next two hearings. No tape recording of those hearings exists, and the minutes of those hearings do not provide any guidance on the meaning of the redrafted bill. The only explanation of the redrafted bill comes from Senator Carson's discussion of the bill before the full Senate.

Before the full Senate, Senator Carson began by referring to the testimony presented before the committee about the abuse of the elderly that had taken place in assisted living facilities. Tape Recording, Senate Floor, SB 780, June 29, 1973, Tape 32, Side 1 (statement of Sen Wallace P. Carson, Jr.). He then stated:

> "[The bill is] a little different than the bill that was originally introduced, but I believe it goes to the same point. We [heard] considerable testimony in committee [about] some of the practices in some of the homes for the aged, or, in fact, where any citizen of Oregon may be housed. Sometimes people can hurt other people by intentionally or negligently withholding adequate food, physical care or medical attention from the people when they have an affirmative duty to provide that attention. We felt that the criminal code, if it's a physical abuse thing where somebody actually hits someone, the criminal code takes care of that [already].

> "Where it's nonfeasance rather than malfeasance, in other words, where it's withholding of some food or some other thing, the criminal code perhaps did not speak directly to that. * * * The only difference [between first- and second-degree criminal mistreatment] being that the second degree is, is a misdemeanor, a Class A misdemeanor that relates to negligently or unintentionally withholding the *services* from this individual and the more serious crime of criminal mistreatment in the first degree is where one who has an affirmative duty to provide the food, or the physical care or medical attention intentionally withholds that *service*."

*Id.* (emphasis added). Immediately after Senator Carson's statement, the Senate voted to pass the bill. The House also passed the bill, and the Governor signed it into law.

We note two observations regarding the legislative history. First, Senator Carson explained that persons who have an affirmative duty to provide food, physical care, or medical attention violate the statutes when, with the requisite mental state, they "withhol[d] *that service*." (Emphasis added.) Senator Carson's explanation that the statutes prohibit withholding specific services is at odds with the state's position that the statutes criminalize any and all acts that create or fail to correct a future safety risk. The second point is related to the first. Nowhere in the available legislative history does anyone mention creating or failing to correct environmental dangers as the focus of the bill. Rather, the examples mentioned before either the committee or the Senate involved the failure to provide essentials, such as food, from dependent persons. We find nothing in the legislative history to support the broad reading that the state urges. Rather, the legislative history is consistent with the narrower view of the statutes that we draw from their text and context.

Considering the text and context of ORS 163.200 and ORS 163.205 in light of their legislative history, we hold that a person withholds necessary and adequate physical care from a dependent person when the person keeps back from the dependent person those physical services and attention that are necessary to provide for the dependent person's

bodily needs.[5] In this case, the question is whether creating or failing to correct safety hazards in the home constitutes withholding adequate and necessary physical care, and we turn to the facts of the two cases.

■ In *Baker-Krofft*, the evidence taken in the light most favorable to the state showed that some electrical devices and a space heater positioned on a stack of straw in a chicken coop in the backyard posed potential fire hazards, that there were no fire alarms in the house, and that the house was full of clutter that would impede an escape.[6] On the other hand, it was uncontested that the child was in good health and that the fire dangers posed only a risk of future harm. Put differently, there was no evidence from which a reasonable trier of fact could infer that the defendant in *Baker-Krofft* had withheld from her child some physical service necessary to provide for the child's bodily needs, nor was there any evidence that defendant failed to protect her child from an immediate harm.

In *McCants / Walker*, the evidence taken in the light most favorable to the state showed an incredibly dirty home with small pieces of plastic that posed potential choking hazards within reach of the children. However, the children were well fed and healthy. No evidence permitted a reasonable inference that defendants had failed to provide for their children's bodily needs or protect them from an immediate harm.

This is not to say that defendants in either case were exemplary parents. It may well be that, in light of the conditions of defendants' homes and the attendant risks to their

---

[5] The services necessary to maintain a dependent person's bodily health will vary depending on the person's needs. They may include, for example, periodically turning a bedridden person who is unable to move on her own so that she does not develop bed sores or maintaining a child or elderly person's personal hygiene so that the person does not develop infections or some other illness. This case does not require us to explore all the types of physical care that might be required. Rather, the question in this case is limited to whether the prohibition against withholding physical care includes creating or failing to correct a safety hazard in the home.

[6] At trial, there was testimony that the child had head lice at some point and that the house and the child's bedding were filthy. However, because the state concedes in its brief that "those conditions, by themselves, are insufficient to support a conviction," we do not consider them.

children's safety, the juvenile court could have taken jurisdiction over the children to protect them while the Department of Human Services (the successor to the Children's Services Division) worked with defendants to correct the unsafe conditions in their homes. Those conditions, however, were not sufficient to give rise to criminal liability under either ORS 163.200 or ORS 163.205.

In *State v. Baker-Krofft*, S057958, the decision of the Court of Appeals and the judgment of the circuit court are reversed.

In *State v. McCants / Walker*, S058148, the decision of the Court of Appeals and the judgment of the circuit court are reversed.