Submitted October 29, reversed November 24, 2010

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## CRYSTAL ANN INLOES,
*Defendant-Appellant.*

Marion County Circuit Court
08C44067; A140566

243 P3d 862

Peter Gartlan, Chief Defender, and David Ferry, Deputy Public Defender, Legal Services Division, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Inge D. Wells, Senior Assistant Attorney General, filed the brief for respondent.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

HASELTON, P. J.

## HASELTON, P. J.

■       Defendant, who was convicted of four counts of first-degree criminal mistreatment (corresponding to each of her four children), appeals, contending that the evidence adduced at trial was legally insufficient to demonstrate that she "intentionally or knowingly with[held] necessary and adequate food, physical care or medical attention," ORS 163.205(1)(a),[1] from any of her children. Defendant acknowledges that she raised no challenge in the trial court to the sufficiency of the state's proof but contends that we should review and correct the purported error as an "error of law apparent on the face of the record." ORAP 5.45(1). Although the failure to move for a judgment of acquittal is ordinarily fatal to an unpreserved challenge to the sufficiency of the evidence, we conclude that, given the intervening elucidation of controlling legal principles in *State v. Baker-Krofft*, 348 Or 655, 239 P3d 226 (2010), the entry of convictions for criminal mistreatment on this record constitutes plain error, and we affirmatively exercise our discretion under *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991), to address and remedy that error. Accordingly, we reverse defendant's convictions.

It would be of little benefit to the parties—or to the bench, the bar, or the public—to recount the circumstances of this case, and specifically the conditions in defendant's home, in detail. It suffices to say that, viewing the evidence (necessarily) in the light most favorable to the state, various areas of the home and its curtilage were filthy, cluttered and strewn with garbage, and malodorous. Further, a dryer in the basement was not properly vented, and there was a buildup of lint (which was flammable) behind the dryer, and there was a Drano container, without a lid, in a downstairs

---

[1] ORS 163.205 provides, in part:

"(1) A person commits the crime of criminal mistreatment in the first degree if:

"(a) The person, in violation of a legal duty to provide care for another person, or having assumed the permanent or temporary care, custody or responsibility for the supervision of another person, intentionally or knowingly withholds necessary and adequate food, physical care or medical attention from that other person[.]"

Criminal mistreatment in the first degree is a Class C felony. *See* ORS 163.205(3).

bathroom. Three of defendant's four children, ages eleven, eight, five, and two, were at home, and they appeared, to the police officers who inspected defendant's home with her consent, to be healthy, clean, and appropriately clothed.

Defendant was convicted in October 2008. At that time, the controlling standard of culpability for withholding of "physical care" under the criminal mistreatment statutes was that announced in *State v. Damofle/Quintana*, 89 Or App 620, 624, 750 P2d 518, *rev den*, 305 Or 671 (1988):

> "The term 'physical care' is not defined in the statute. Therefore, we apply its ordinary meaning. * * * The term 'physical' means 'of or relating to the body * * * often opposed to mental' or 'concerned or preoccupied with the body and its needs.' *Webster's Third New International Dictionary* 1706 (1976). The term 'care' means 'serious attention; * * * attention accompanied by caution, pains, wariness, personal interest, or responsibility * * * responsibility for or attention to safety or well being.' *Webster's, supra*, 338. *The term 'physical care' thus includes attention to the safety or well being of the body. That attention necessarily includes attention to dangers in the body's environment.*"

(Emphasis added.) Applying that standard in *Damofle/Quintana*, we concluded that the trial court there had properly denied a motion for judgment of acquittal, where the conditions in the defendant's home were esthetically appalling and unsanitary—cold, wet, filthy, and noisome—two of the defendant's young children were barefoot and in their underwear, and there was an accessible, partially filled gasoline container, as well as matches "within easy reach of the children." *Id.* at 622. *See also State v. Baker-Krofft*, 230 Or App 517, 523-24, 216 P3d 335 (2009), *rev'd*, 348 Or 655, 239 P3d 226 (2010) (applying *Damofle/Quintana* formulation and noting "broad range of conduct" encompassed within that formulation); *accord State v. McCants/Walker*, 231 Or App 570, 220 P3d 436 (2009), *rev'd by State v. Baker-Krofft*, 348 Or 655, 239 P3d 226 (2010) (attempting, unsuccessfully, to lend precision to application of *Damofle/Quintana* formulation).

■ In August 2010, nearly two years after defendant's trial, the Supreme Court in *Baker-Krofft* addressed for the first time the *Damofle/Quintana* formulation, rejected that

construct, and consequently reversed our dispositions (and the convictions) in both *Baker-Krofft* and *McCants/Walker*. In so holding, the court rejected the state's contention that "physical care" broadly encompassed protecting a child from "potential environmental dangers," *Baker-Krofft*, 348 Or at 661, in the home:

> "[The state's proposed construction] converts a statute that prohibits a present deprivation of services or attention into one that prohibits creating a risk of future harm. To be sure, presently withholding necessary and adequate physical care can impair a child's health and safety. But it does not follow that every risk of future harm to a child's health or safety that a parent either creates or fails to correct constitutes withholding physical care. The former set of risks is far broader than the latter, but the statutory prohibition extends only to the latter set (or subset) of risks."

*Id.* at 663. Accordingly, the court concluded:

> "Considering the text and context of ORS 163.200 and ORS 163.205 in light of their legislative history, we hold that a person withholds necessary and adequate physical care from a dependent person *when the person keeps back from the dependent person those physical services and attention that are necessary to provide for the dependent person's bodily needs*."

*Id.* at 666-67 (emphasis added). Consistently with that standard, the court held that the evidence of, *inter alia*, potential fire hazards in *Baker-Krofft* was legally insufficient because that evidence, at most, pertained only to a "risk of future harm" and there was no "evidence that defendant failed to protect her child from an immediate harm." *Id.* at 667.

Defendant contends that that analysis is dispositive here. As noted, she acknowledges, as she must, that she did not move for a judgment of acquittal; however, she asserts that, especially in light of *Baker-Krofft*, we should review her present challenge as implicating "an error of law apparent on the face of the record." ORAP 5.45(1). The state, which opposed "plain error" review before the Supreme Court's decision in *Baker-Krofft*, now acknowledges that "the issue of whether the unsafe and unsanitary condition of defendant's

home supports a conviction for criminal mistreatment is no longer reasonably in dispute."

■     We have regularly declined to invoke "plain error" review to consider appellate challenges based on purported insufficiency of evidence in cases in which the criminal appellant failed to move for a judgment of acquittal. There are sound prudential and institutional reasons for that general approach, including encouraging adherence to requirements of preservation. *Cf. Ailes*, 312 Or at 382 n 6 (identifying, as among considerations bearing on exercise of discretion to consider and correct "plain error," "whether the trial court was, in some manner, presented with both sides of the issue and given an opportunity to correct any error"). However, where, as here, the controlling legal standard was materially altered in the interim between trial and appeal, that change in law not only controls the determination of whether the asserted error was "plain error," *see State v. Jury*, 185 Or App 132, 136, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003),[2] but can also militate in favor of the court's exercise of discretion under *Ailes* to correct that error. *See, e.g., State v. Banks*, 218 Or App 593, 598, 180 P3d 726 (2008), *vac'd and rem'd on other grounds*, 346 Or 363, 213 P3d 577 (2009) (noting that, if at the time of trial, the defendant had "with remarkable prescience" raised his appellate challenge based on subsequently announced law, "the trial court would have flatly rejected such a challenge").

    Consistently with those principles, we conclude that, given the Supreme Court's intervening decision in *Baker-Krofft*, defendant's convictions were predicated on legally insufficient evidence. *See Jury*, 185 Or App at 136. We further conclude, for two reasons, that it is appropriate to exercise our *Ailes* discretion to correct that error. First, given the intervening material change in the law, "correcting the asserted error here will not subvert the judicial system's 'interest in requiring preservation of error.'" *Banks*, 218 Or App at 598 (quoting *State v. Fults*, 343 Or 515, 523, 173 P3d 822 (2007)). Second, the "gravity of the error," *Ailes*, 312 Or at 382 n 6—the imposition of four felony convictions based on

---

[2] *See id.* (explaining that asserted "plain error" is determined by reference to "the law existing at the time the appeal is decided, and not as of the time of trial").

legally insufficient evidence—is extreme. Accordingly, we reverse defendant's convictions.[3]

Reversed.

---

[3] There is no suggestion here that there is any apposite lesser-included offense.