Argued and submitted February 8, 2012, affirmed June 11, on appellant's
petition for reconsideration filed June 18, allowed by opinion August 6, 2014
See 264 Or App 506, 333 P3d 1098 (2014)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

AMANDA BURCIAGA,
*Defendant-Appellant.*

Marion County Circuit Court
09C49149; A146161

328 P3d 782

Chris W. Dunfield argued the cause and filed the brief for
appellant.

Laura S. Anderson, Senior Assistant Attorney General,
argued the cause for respondent. With her on the brief were
John R. Kroger, Attorney General, and Mary H. Williams,
Solictor General.

Before Duncan, Presiding Judge, and Haselton, Chief
Judge, and Rasmussen, Judge pro tempore.

DUNCAN, P. J.

**DUNCAN, P. J.**

While she traveled out of town on several occasions, defendant left her two young children, J and N, with her boyfriend, Ros, knowing that he had previously abused the older child, J. On one of those occasions, Ros broke J's arm, collar bone, and shoulder blade. On another, he abused N, causing injuries that led to her death.

Defendant was charged with and convicted of three counts of criminal mistreatment in the first degree, which is defined by ORS 163.205. That statute provides that "[a] person commits the crime of criminal mistreatment in the first degree if * * * [t]he person, in violation of a legal duty to provide care for another person, * * * intentionally and knowingly withholds necessary and adequate food, physical care or medical attention from that other person[.]" ORS 163.205(1)(a). Count 1 alleged that defendant had withheld medical attention from J and was based on evidence that defendant had not sought medical care for J after Ros broke J's arm, collar bone, and shoulder blade. Counts 2 and 3 alleged that defendant had withheld physical care from J and N, respectively, and were based on evidence that defendant left J and N with Ros even after he had assaulted J.

Defendant waived her right to a jury, and the case was tried to the court. At the conclusion of the state's case-in-chief, defendant moved for a judgment of acquittal on Counts 2 and 3, asserting that leaving J and N with Ros did not constitute the "withhold[ing of] necessary and adequate * * * physical care * * *." The court denied the motion and convicted defendant of all three counts. Defendant appeals, assigning error to the court's denial of her motion for a judgment of acquittal on Counts 2 and 3. For the reasons explained below, we affirm.

When reviewing a denial of a motion for a judgment of acquittal, we view the evidence in the light most favorable to the state to determine whether a rational factfinder, making reasonable inferences, could have found all the elements of the offense beyond a reasonable doubt. *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998). Stated in accordance with that standard, the relevant facts are as follows.

Defendant's son, J, was born in February 2005, when defendant was 15 years old; her daughter, N, was born in January 2006. In June 2006, defendant began dating Ros. J was not very verbal at the time of the incidents in this case and was later diagnosed with autism.

In March 2007, when J was two years old, defendant left J and N with Ros for the first time. While he was watching the children, Ros assaulted J. J was bruised on his face and body, had a handprint on his face, and was bleeding from his ear. Defendant saw those injuries, and immediately recognized the handprint for what it was, but did not contact the police. J and N's paternal grandmother saw J shortly thereafter, noticed his injuries, and had her daughter contact the police. Ros was charged with first-degree criminal mistreatment and third-degree assault. He pleaded guilty to and was convicted of fourth-degree assault, and the judgment of conviction required that Ros have no contact with J or J's family. Defendant knew about the conviction and the no-contact provision, and, ultimately, she believed that Ros had assaulted J. Ros said that he struck J because he was frustrated with J's crying; defendant knew that that was Ros's stated reason for assaulting J. Defendant and Ros broke off their relationship for a time after that, but in July 2007 Ros moved in with defendant and her children.

In early February 2008, defendant went out of town and left J and N with Ros. J was three years old, and N was two years old. When defendant returned on the night of February 7, J was throwing up and had a fever. The next morning, defendant observed that J had "pink spots" that she ultimately recognized as bruises on his chest and was missing clumps of hair from the top of his head. She asked Ros about J, and he responded that J was just sick. Defendant called her father, who suggested that she photograph J's injuries and send the photographs to him. Once he saw the photographs, defendant's father suggested she take J to the doctor. Defendant took J to the emergency room later that day. J was bruised in an uncommon pattern that indicated that his injuries were inflicted, not accidental. He had liver damage that was consistent with being punched, kicked, or stomped by an adult. X-rays were taken, and there was no evidence of fractures at that time. When asked by

emergency room staff if J could have been abused, defendant said no and did not mention that J had been staying with someone who had previously been convicted of assaulting him.

Shortly thereafter, in mid-February 2008, defendant traveled out of town for several days, again leaving J and N with Ros. On February 13, 2008, the day after she returned, defendant noticed that J now appeared to be bruised on his chest and was "really bad[ly]" bruised on his side. His collarbone area was swollen, and the back of his shoulder was protruding. His left shoulder and upper arm were swollen to the extent that it was difficult to remove his shirt. Defendant took photographs of those injuries as well, but there is no evidence that she shared them with anyone else at the time. Defendant chose not to contact her father about J's injuries on this occasion, although she knew that her father would have advised her to take him to the hospital.

Initially, defendant believed that Ros had injured J, and she confronted Ros about the injuries. Ros gave several accounts of how J had injured his arm and shoulder and claimed that the injuries were not serious. Defendant ultimately accepted Ros's view that the injuries were not serious and did not seek medical care for J at that time. J was later diagnosed with a broken humerus, clavicle, and scapula. The injury to J's scapula was consistent with a blow or kick from an adult. The injuries would have been extremely painful. Moving the arm at all would have been very painful, and typically a child with J's injuries would not move his arm. In fact, three weeks later, an examining doctor observed that J still did not want to move his injured arm much. J's injuries would have made it "terribly painful" for him to have his shirt changed and would have interfered with his sleep. Untreated, the injury to J's humerus could have been disfiguring.

Less than a month later, in early March 2008, defendant traveled out of town and left J and N with Ros again. On March 8, while defendant was out of town, Ros assaulted N, causing injuries that resulted in her death. Ros was ultimately convicted of a number of crimes in connection with

N's death, including murder by abuse, first-degree sexual abuse, and fourth-degree assault.

As mentioned, defendant was charged with and convicted of three counts of first-degree criminal mistreatment, one for withholding medical attention from J (Count 1) and two for withholding physical care from J and N (Counts 2 and 3). On appeal, she assigns error to the trial court's denial of her motion for judgment of acquittal on Counts 2 and 3, renewing her argument that leaving J and N with Ros did not constitute the "withholding of necessary and adequate * * * physical care" for the purposes of the first-degree criminal mistreatment statute, ORS 163.205(1)(a). Thus, this appeal presents a question of statutory interpretation. ORS 163.205(1)(a) provides:

"(1) A person commits the crime of criminal mistreatment in the first degree if:

"(a) The person, in violation of a legal duty to provide care for another person, or having assumed the permanent or temporary care, custody or responsibility for the supervision of another person, intentionally or knowingly withholds necessary and adequate food, physical care or medical attention from that other person[.]"

As it was in the trial court, the state's theory on appeal is that defendant knew that Ros had assaulted J in March 2007, knew that his conviction for that assault prohibited Ros from being around her children, and knew—or at least strongly suspected—that Ros had assaulted J in early February 2008. Despite her knowledge and suspicions, defendant again left J and N with Ros while she traveled out of town for several days in both mid-February 2008 and early March 2008. On the first of those occasions, J suffered extensive abuse resulting in serious and painful injuries, including three broken bones. On the second of those occasions, N suffered abuse that led to her death. The state argues that, by leaving J and N with Ros on those occasions, defendant withheld from them the physical care required to meet their basic safety and survival needs and left them in a condition almost certain to cause them serious physical pain and injury.

Defendant argues that the state's theory is inconsistent with the Supreme Court's decision in *State v. Baker-Krofft*, 348 Or 655, 239 P3d 226 (2010), in which the court interpreted the phrase "withholds necessary and adequate * * * physical care" for the purposes of the first- and second-degree criminal mistreatment statutes, ORS 163.200 and ORS 163.205.

*Baker-Krofft* involved two cases that were consolidated for review. In both cases, the defendants were indicted for "withhold[ing] necessary and adequate * * * physical care" from their dependent children.[1] 348 Or at 658. The allegations were based on the conditions of the defendants' houses. *Id.* In one case, *Baker-Krofft*, the defendant's house "posed specific fire hazards (such as a space heater sitting on a pile of straw in a chicken coop in the backyard), did not contain working fire alarms, and was so full of clutter that it would have been difficult to escape from any fire." *Id.* In the other case, *McCants/Walker*, the defendants' house was "filled with debris, which included some small items on the floor that posed a potential choking hazard to the young children who lived in the home." *Id.*

In both cases, the defendants moved for judgments of acquittal, asserting that the state had failed to present legally sufficient evidence that they had "with[eld] necessary and adequate * * * physical care." The trial courts denied the motions, and the defendants were convicted. They appealed, assigning error to the denial of their motions for judgments of acquittal, and we affirmed. *State v. Baker-Krofft*, 230 Or App 517, 523-24, 216 P3d 335 (2009); *State v. McCants/Walker*, 231 Or App 570, 584, 220 P3d 436 (2009).

---

[1] In *Baker-Krofft*, the defendant was indicted for second-degree criminal mistreatment, ORS 163.200, and in *McCants/Walker*, the defendants were indicted for first-degree criminal mistreatment, ORS 163.205. The crimes differ in two respects:

"The second-degree criminal mistreatment statute requires proof of criminal negligence and applies only to persons who have a legal duty to provide care for another. ORS 163.200(1). The first-degree statute, by contrast, requires proof that the defendant acted knowingly or intentionally, and it applies not only to persons who have a legal duty to provide care for another but also to persons who 'hav[e] assumed the permanent or temporary care, custody or responsibility of another person.' ORS 163.205(1)(a)."

*Baker-Krofft*, 348 Or at 660 n 3.

The Supreme Court allowed review to consider the question of "what constitutes 'withhold[ing] necessary and adequate *** physical care' within the meaning of" the criminal mistreatment statutes, ORS 163.200 and ORS 163.205. *Baker-Krofft*, 348 Or at 658.

To resolve that question, the court first examined the text of the phrase "withholds necessary and adequate *** physical care" and, applying dictionary definitions, concluded that (1) "withholds" means "to keep back" and, therefore, "the statutes rest on the premise that the actor keeps back something (food, physical care, or medical attention) from a person who would not otherwise be able to obtain it for him or herself," and (2) "providing 'physical care' means providing for or attending to another person's bodily needs." *Id.* at 661-62. Based on those definitions, the court further concluded that "a defendant withholds physical care from a dependent person when the defendant keeps back from the dependent person those physical services and attention that are necessary to provide for the dependent person's bodily needs." *Id.*

In doing so, the court expressly rejected the state's argument that "creating or failing to correct any and all dangers to the child's safety comes within the prohibition against withholding necessary and adequate physical care." *Id.* The court explained:

> "The state's interpretation is difficult to square with the statutes' texts in three respects. First, it converts the verb 'withhold' into 'create' or 'fail to correct.' Second, it converts a prohibition against withholding specific services (food, physical care, and medical attention) into a prohibition against creating any and all risks to a dependent person's health. Third, it converts a statute that prohibits a present deprivation of services or attention into one that prohibits creating a risk of future harm."

*Id.* at 662-63.

The court noted that its interpretation of "withhold[ing] necessary and adequate *** physical care" was consistent with the context of the phrase. It explained that the criminal mistreatment statutes

"prohibit withholding necessary and adequate 'food' and 'medical attention,' as well as physical care. Both food and medical attention are essential to maintain bodily health. Grouping physical care together with food and medical attention suggests that the legislature understood that physical care was similarly limited to those essential physical services and attention that are necessary to provide for a dependent person's bodily needs."

*Id.* at 663.

In addition, the court found support for its interpretation in the legislative history of the criminal mistreatment statutes, which, albeit limited, indicates that the statutes were intended to apply to the withholding of a specific "*service.*" *Id.* at 666 (emphasis in original). That history, the court explained, "is at odds with the state's position that the statutes criminalize any and all acts that create or fail to correct a future safety risk." *Id.*

Based on the text, context, and legislative history of the criminal mistreatment statutes, the court ruled that "a person withholds necessary and adequate physical care from a dependent person when the person keeps back from the dependent person those physical services and attention that are necessary to provide for the dependent person's bodily needs." *Id.* at 666-67.

Applying that rule to the facts of the cases before it, the court held that the state had failed to present legally sufficient evidence that the defendants had withheld necessary and adequate physical care from their children. In *Baker-Krofft*, the evidence, viewed in the light most favorable to the state, was "that some electrical devices and a space heater positioned on a stack of straw in a chicken coop in the backyard posed potential fire hazards, that there were no fire alarms in the house, and that the house was full of clutter that would impede an escape," but "it was uncontested that the child was in good health and that the fire dangers posed only a risk of future harm." *Id.* at 667. The court concluded that the evidence was insufficient, explaining that

"there was no evidence from which a reasonable trier of fact could infer that the defendant in *Baker-Krofft* had withheld from her child some physical service necessary to provide

for the child's bodily needs, nor was there any evidence that defendant failed to protect her child from an immediate harm."

*Id.* at 667.

In *McCants/Walker*, the evidence viewed in the light most favorable to the state "showed an incredibly dirty home with small pieces of plastic that posed potential choking hazards within the reach of the children. However, the children were well fed and healthy." *Id.* The court concluded that "[n]o evidence permitted a reasonable inference that defendants had failed to provide for their children's bodily needs or protect them from an immediate harm." *Id.*

In sum, *Baker-Krofft* establishes that "a person withholds necessary and adequate physical care from a dependent person when the person keeps back from the dependent person those physical services and attention that are necessary to provide for the dependent person's bodily needs." *Id.* at 666-67. It also establishes that necessary and adequate physical care does not include creating or failing to correct "any and all" risks to a child's safety. *Id.* at 662-63. But, it suggests that such care does include creating or failing to correct certain risks. *See id.* at 667 (noting that there was no evidence that the defendants failed to protect their children from "an immediate harm"). Those risks may include risks of physical injuries or illnesses. As the court noted, "[t]he services necessary to maintain a dependent person's bodily health will vary depending on the person's needs." *Id.* at 667 n 5. For example, they may include "periodically turning a bedridden person who is unable to move on her own so that she does not develop bed sores or maintaining a child or elderly person's personal hygiene so that the person does not develop infections or some other illness." *Id.* Thus, *Baker-Krofft* suggests that necessary and adequate physical care may include some types of preventative or protective care.

In this case, defendant relies on *Baker-Krofft*, asserting that it establishes that "fail[ing] to protect" a child "does not constitute criminal mistreatment under Oregon law." Defendant contends, without limitation, that "[c]reating a risk of future harm, such as failing to correct hazards

in the home, is insufficient." She argues that, when she left her children with Ros, she "merely created a risk of harm" and, therefore, "did not knowingly or intentionally withhold physical care from either child."

Defendant reads too much into *Baker-Krofft*. By the court's own description, the question before it was "narrow," 348 Or at 660, and it did not require the court to "explore all the types of physical care that might be required," *id.* at 667 n 5. Although the court announced a rule, that rule is not as broad as defendant argues. It does not preclude the possibility that necessary and adequate physical care of a dependent person includes protecting the person from certain types of future harms. Indeed, as described above, the decision suggests that necessary and adequate physical care may include protecting against "immediate harm[s]," *id.* at 667, as well as some types of foreseeable "infections or *** illness[es]," *id.*

Here, we conclude that the state presented legally sufficient evidence that defendant withheld necessary and adequate physical care from her children. Specifically, the state presented evidence that defendant withheld essential attention from them—attention that she had a legal duty to provide and that, under the circumstances, was necessary to provide for their basic bodily needs, indeed, for their survival. *See also State v. Drown*, 245 Or App 447, 462, 263 P3d 1057, *rev den*, 351 Or 401 (2011) (withholding necessary and adequate physical care includes "fail[ing] to provide for a dependent's most basic needs—such as the need for food, *** safety, and survival"); *cf. State v. Goetzinger*, 262 Or App 220, 231, 326 P3d 1208 (2014) (withholding necessary and adequate medical attention does not include failure to obtain examination for injury causing minimal pain). Defendant put her children in a situation where there was a substantial risk that they would suffer serious harm and then she turned her back on them. Her conduct constituted a present deprivation of essential physical care. Just as leaving a young child outside in severe winter weather without protective clothing or shelter for an extended period of time would constitute withholding necessary and adequate physical care, defendant's actions constituted withholding

necessary and adequate physical care; she left them exposed to likely serious harm.

As recounted above, Ros assaulted J in March 2007 and in early February 2008. Following the March 2007 assault, J was bruised, had a handprint on his face, and was bleeding from his ear. Ros was criminally prosecuted for the assault and was convicted of fourth-degree assault, placed on probation, and ordered to have no contact with defendant and her children, and defendant knew that Ros's explanation for the assault was that he had become frustrated with J's crying. Following the early-February 2008 assault, J was vomiting, had a fever, was bruised, and was missing clumps of hair. Defendant photographed the injuries and took J to the emergency room, where she learned that J's bruising and liver damage indicated that he had been subjected to an intentional and substantial assault. She was told that J's injuries were consistent with being punched, kicked, or stomped by an adult.

Despite the March 2007 and early-February 2008 assaults, defendant left J and N with Ros again in mid-February, when J was three years old and N was two years old. When she returned, she discovered that J was very badly bruised, his collarbone was swollen, and the back of his shoulder was protruding. Defendant took photographs of the injuries, but did not seek medical attention for J at that time; it was later determined that J had three broken bones. Despite those injuries—which would have caused J pain and difficulty sleeping—defendant left J and N in Ros's care again in early March 2008, and on that occasion Ros killed N.

Thus, defendant left her young children alone with Ros for several days in mid-February, after he had assaulted J twice, and she left them alone with him again for several days in early March, after he had assaulted J a third time. By leaving her children with Ros on the final two occasions, defendant exposed her unprotected children to a person who had repeatedly and recently abused J under circumstances where he was likely to abuse them. The children were young and pre- or marginally verbal; they were unable to protect themselves or seek protection from others. She left them in

a situation in which they were exposed to a known and prolonged threat of the kind of abuse that could result in serious physical injury or death. And, importantly, the likelihood that the threat would be realized was high, given Ros's repeated, recent, and escalating abuse of J and the fact that Ros's explanation for his initial abuse of J, in March 2007, was that he had struck J because he was frustrated with J's crying; it is likely that children of J's and N's ages, during a period of several days, will cry.

Affirmed.