Argued and submitted April 21, 2015, conviction for criminal mistreatment on Count 1 reversed, remanded for resentencing, otherwise affirmed May 11, 2016

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# JAMES CHRISTOPHER HICKEY,
*Defendant-Appellant.*

Lane County Circuit Court
211218261; A153876

373 P3d 1246

Erica Herb, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Joanna L. Jenkins, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and Tookey, Judge.

## SERCOMBE, P. J.

Defendant appeals a judgment of conviction for one count of first-degree criminal mistreatment, ORS 163.205(1)(a),[1] and two counts of second-degree child neglect, ORS 163.545. Defendant raises two assignments of error. We reject defendant's second assignment of error—relating to the admission of evidence under OEC 106—without discussion. Defendant argues, in his first assignment of error, that the trial court erred in denying his motion for judgment of acquittal on the criminal mistreatment charge. Because we conclude that the evidence presented at trial was insufficient to support a conviction on that charge, we reverse defendant's conviction for first-degree criminal mistreatment, remand for resentencing, and otherwise affirm.

We begin with the facts, which we state "in the light most favorable to the state." *State v. Baker-Krofft*, 348 Or 655, 658 n 1, 239 P3d 226 (2010). Sometime during the previous night or the early morning of August 18, 2012, defendant's children, K and C, climbed out of defendant's house through their bedroom window. Defendant had put the children to bed at about 8:30 p.m., and they were discovered wandering in the road by passing motorists at approximately 8:15 a.m. the next morning. K was four years old and C was five. C had autism spectrum disorder and a condition that made him incontinent; he was not toilet trained and wore a diaper. When C was discovered, his diaper was heavily soiled, and he smelled strongly of urine and feces.

About five minutes after finding K and C, the motorists called 9-1-1, and they waited with the children until 9:30 or 9:40 a.m. when deputies Gill and Marelli responded. The deputies determined that K and C lived in a nearby house, and they contacted a DHS caseworker to alert him

---

[1] ORS 163.205(1)(a) provides:

"(1) A person commits the crime of criminal mistreatment in the first degree if:

"(a) The person, in violation of a legal duty to provide care for another person, or having assumed the permanent or temporary care, custody or responsibility for the supervision of another person, intentionally or knowingly withholds necessary and adequate food, physical care or medical attention from that other person[.]"

of the situation and confirm that the children still lived in the house. They decided to wait for the caseworker to arrive before transporting the children back to the house, because they did not have car seats in either of their patrol cars.

The caseworker arrived at approximately 10:20 to 10:25 a.m., and a few minutes later the deputies loaded the children into the caseworker's car. They all arrived at defendant's house at 10:37 a.m. In the more than two hours that had passed after K and C were discovered in the road, no one came looking for them. However, someone entered the house after the children were discovered but before the deputies arrived. Additionally, two people dressed in suits knocked on the door, and someone inside answered, at about 10:00 a.m.

When the deputies knocked on defendant's door, defendant's son, H, answered the door, and defendant came to the door a few moments later. The deputies asked defendant if he had two boys, and he said that he did. They then asked him if he knew where they were, and he said that he thought they were in the bedroom. The deputies told defendant that the boys had left the house. Defendant said he did not know they had gotten out of the house and that he had been sleeping when the officers knocked on the door.

Defendant told the deputies that he had put the boys to bed at 8:30 p.m. the night before and had last checked on them at 3:30 a.m., when he went to bed. Defendant had cracked a window in the bedroom and locked the bedroom door when he put the boys to bed. He stated that the boys usually get up around 7:30 a.m. He explained that the boys make so much noise when they wake up that no one else in the house is able to sleep. So, because he had not yet heard them, he had assumed they were still sleeping. Defendant acknowledged that he had answered the door for two Jehovah's Witnesses earlier in the morning but said that he had gone back to sleep after they left. Defendant also told the deputies that C had climbed out through a window once before. And he recounted that, ordinarily, C's diaper would have been changed when he first woke up at 7:30 a.m., and it always needed to be changed at that time.

While other deputies interviewed defendant, Gill decided to change C's diaper. Gill described the diaper change as follows:

"[GILL]: The diaper was completely filled with urine, liquid. Smelled very, very badly. It was filled with feces. Feces was completely around to the front, so the groin region all the way around his penis and testicles, all the way around the back, and had caked to the waistline of his body and all around his buttocks and all the way around the front. It had caked on so much and it had dried on, and it was very difficult to get it cleaned off.

"[PROSECUTOR]: And was there any area of concern that you noted when you changed him?

"[GILL]: The entire diaper area was a concern, but primarily the penis and scrotum area.

"And back whenever—he was an uncircumcised male, and pulling back the foreskin to try to clean back because there was so much feces over his entire genital area, it was red, inflamed, and he complained very strongly.

"And it's the only time I actually heard him utter words that I could understand; he said, 'Poop hurts.' And he flailed quite a bit whenever I was trying to clean off that area.

"He'd comply. I mean, he didn't kick away and kick me away, but he clearly writhed in * * * discomfort."

Marelli similarly described the diaper change. He said that it appeared to have been a long time since the diaper had been changed and that it was

"full and it was stinky. We tried to get [H] to help us find diapers and wipes. * * * And as [Gill was] changing his diaper, parts of his [C's] skin had dry feces on it. There was a lot of feces in the diaper. I remember [C] saying, 'Poop hurts,' several times. And that's the only words that I remember him saying while I was there."

As a result of that incident, defendant was charged with four counts of first-degree criminal mistreatment. Counts 1 and 3 related to C; in Count 1, defendant was charged with unlawfully and knowingly withholding necessary and adequate physical care from C under ORS 163.205(1)(a), and, in Count 3, defendant was charged with unlawfully and knowingly leaving C unattended at a place

for a period of time that was likely to endanger C's health and welfare under ORS 163.205(1)(b)(C). In Counts 2 and 4, defendant was charged with criminal mistreatment of K under those same provisions. Prior to trial, the state moved to dismiss Count 2, based on withholding necessary and adequate physical care from K, because there was insufficient evidence to prove the charge. The remaining counts were tried to a jury.

The state presented testimony from Gill and Marelli, as well as the motorists who discovered C and K and the DHS caseworker who responded to the scene, to the facts as stated above. At the close of the presentation of evidence, defendant moved for judgment of acquittal on Count 1, arguing that the state failed to present sufficient evidence from which a jury could find that he had knowingly withheld necessary and adequate physical care from C. The trial court denied the motion. The jury then found defendant guilty of first-degree criminal mistreatment on Count 1 and two counts of second-degree child neglect, a lesser included offense, for Counts 3 and 4.[2]

On appeal, defendant argues that the trial court erred in denying his motion for judgment of acquittal on Count 1, criminal mistreatment for withholding necessary and adequate physical care from C. According to the prosecutor, Count 1 was premised on defendant's failure to change C's heavily soiled diaper in a timely manner on the morning of the incident. Defendant contends that he did not withhold necessary and adequate physical care by failing to timely change C's diaper on a single occasion. In particular, relying on *State v. Drown*, 245 Or App 447, 263 P3d 1057, *rev den*, 351 Or 401 (2011), defendant argues that the state's evidence was insufficient because it did not show that his failure to change C's diaper amounted to a "cruel deprivation of care" that caused or would cause "serious physical pain or injury."[3]

---

[2] Count 1 was premised on defendant's failure to change C's diaper, whereas Counts 3 and 4 were premised on leaving C and K unattended in the bedroom with the door locked and the window open.

[3] Alternatively, defendant argues that, even if he withheld adequate and necessary physical care from C, the state nevertheless failed to present sufficient

The state responds that there was sufficient evidence to prove that defendant withheld necessary and adequate physical care. The state argues that a jury could find that it was a "cruel deprivation of care" to leave C locked in the bedroom for over 14 hours, during which time defendant failed to feed him or change his diaper, which resulted in C's skin being raw, inflamed, and "caked with dried-on feces." The state also contends that, because C's skin was raw and inflamed, a jury could infer that this incident was not the first time that defendant had failed to change C's diaper in a timely manner. The state further argues that it presented sufficient evidence of the seriousness of C's pain or injury through the evidence of the condition of C's skin and Gill's testimony that C "writhed" in discomfort and said "poop hurts" when he changed C's diaper.

Thus, we must determine whether, viewing the facts in the light most favorable to the state, a rational trier of fact could find that the state proved the elements of the crime beyond a reasonable doubt. *State v. Reed*, 339 Or 239, 243, 118 P3d 791 (2005). As noted, ORS 163.205(1)(a) provides, in part:

"(1)   A person commits the crime of criminal mistreatment in the first degree if:

"(a)   The person, in violation of a legal duty to provide care for another person, or having assumed the permanent or temporary care, custody or responsibility for the supervision of another person, intentionally or knowingly withholds necessary and adequate * * * physical care * * * from that other person[.]"

To convict defendant of criminal mistreatment under ORS 163.205(1)(a) the state was required to prove three elements: "(1) the defendant acted with the requisite mental state [here, 'knowingly']; (2) the defendant had a duty to provide care for a person; and (3) the defendant 'withh[eld] necessary and adequate * * * physical care * * *' from that person." *Baker-Krofft*, 348 Or at 660 (second brackets in original). For purposes of resolving this case, the dispositive issue is whether defendant withheld necessary and adequate

evidence from which a jury could find that he *knowingly* withheld that care. Our disposition obviates the need to address that argument.

physical care. Moreover, that issue is further constrained because defendant does not dispute that he "withheld * * * physical care" from C in failing to change his diaper. Thus, we consider only whether there was sufficient evidence for a jury to find that the physical care that he withheld from C qualifies as "necessary and adequate * * * physical care."

In *Baker-Krofft*, the Supreme Court construed ORS 163.205(1)(a) and held that, through the statute's proscription against withholding "necessary and adequate physical care," the legislature intended to criminalize "keep[ing] back from the dependent person those physical services and attention that are necessary to provide for the dependent person's bodily needs." *Id.* at 666-67. The court explained that "necessary and adequate physical care" may include "maintaining a child or elderly person's personal hygiene so that the person does not develop infections or some other illness" or suffer from other bodily harm due to the deprivation of care. *Id.* at 667 n 5; *see also State v. Burciaga*, 263 Or App 440, 448, 328 P3d 782, *adh'd to as modified on recons*, 264 Or App 506, 333 P3d 1098, *rev den*, 356 Or 575 (2014) (explaining that "necessary and adequate physical care" may include protecting the child from "risks of physical injuries or illnesses"). Thus, the statute may be violated by a course of conduct amounting to a failure to protect the dependent person against a risk of future bodily harm. However, the statute does not include "any and all acts that create or fail to create" a future risk to the dependent person's safety, particularly where addressing that risk is not necessary to protect the person from "immediate harm." *Baker-Krofft*, 348 Or at 666-67.

Following the Supreme Court's decision in *Baker-Krofft*, we elaborated on the meaning of "necessary and adequate physical care" in *Drown*, 245 Or App 447. In that case, we considered whether the state had presented sufficient evidence for a jury to find that the defendant had withheld necessary and adequate physical care from four of her children by failing to take them to the dentist, when the children had untreated cavities or required root canals. *Id.* at 462-64. Interpreting the terms "necessary" and "adequate," we explained that the plain meaning of those terms indicated

that ORS 163.205(1)(a) was directed towards "the withholding of care that is 'absolutely required,'" and that the statute was "intended to criminalize the failure to provide for a dependent's 'essential' needs in a 'sufficient' or 'narrowly or barely sufficient' manner." *Id.* at 462. The statute is therefore aimed at those who "fail to provide for a dependent's most basic needs * * * for safety and survival." *Id.* We also noted that the legislative history of the statute indicated that it was focused on "cruel deprivations" of care—those that could result in "severe or extreme pain or injury." *Id.* (internal quotation marks omitted).

Thus, we held that, under ORS 163.205(1)(a), "a person withholds necessary and adequate physical care when the person withholds care that is absolutely required to meet a dependent's basic safety and survival needs." *Id.* at 464. We further explained that, for criminal mistreatment based on a failure to care for an existing injury or health condition, the state can meet that standard by showing that the defendant "withh[eld] care for a condition that causes or will cause serious physical pain or injury." *Id.* Additionally, satisfying that standard requires the state to present evidence of the "nature of the pain or injury, including the intensity, duration, and consequences of the pain or injury." *Id.*

In *Drown*, after reviewing the sufficiency of the evidence under those standards, we concluded that the trial court erred in denying the defendant's motion for judgment of acquittal. We explained that, although the state had presented evidence from which a jury could find that the defendant's children had suffered from toothaches, there was no evidence as to the "severity—either in degree or duration—"of those toothaches, pointing to the absence of evidence that the toothaches either "interfered with [the children's] daily activities or were likely to result in serious harm in the long term." *Id.* at 465; *see also State v. Goetzinger*, 262 Or App 220, 231, 326 P3d 1208 (2014) (although the evidence of a child's "deep bruises and scratches * * * could provide a basis to infer that [the child] was in some discomfort or pain," the state failed to present evidence that the child was likely to suffer serious pain or injuries as is required to "show that it was 'necessary' for defendant to provide [the child]

with professional medical attention" in response to those injuries).

Applying those principles here, we must assess whether the state presented evidence from which a jury could permissibly find that defendant withheld care that was absolutely required to meet C's basic safety and survival needs when he failed to timely change C's diaper. Under the facts of this case, the state could potentially meet that standard in two ways. First, as explained in *Drown*, the state could meet that standard by putting on evidence that defendant withheld care for an existing condition that caused or was likely to cause serious physical pain or injury. Second, as discussed in *Baker-Krofft*, the state could also meet that standard by presenting evidence that defendant engaged in a course of conduct in which he failed to maintain C's hygiene as necessary to protect C from a risk of infection, illness, or some other future bodily harm.

The state argues that the evidence in this case was sufficient for the jury to find that, by failing to change C's diaper, defendant withheld care for an existing condition—C's red and inflamed skin—that caused or was likely to cause C to suffer serious physical pain or injury. In the light most favorable to the state, the record includes evidence that defendant failed to change or attempt to change C's diaper from the time he put C to bed at about 8:30 p.m. until after the deputies returned C to his house at 10:37 a.m.—a period of more than 14 hours—and that Gill changed C's diaper about three hours later than it normally would have been changed. The evidence also showed that C's diaper was extremely soiled, it was difficult to remove the dried feces from C's skin, and C had raw and inflamed skin. Moreover, there was evidence that C "flailed quite a bit," "writhed," and said "poop hurts" while Gill changed his diaper. Although that evidence would allow a jury to find that C was in some way injured and experienced some pain as a result of defendant's failure to timely change his diaper, it was insufficient for a jury to find that C experienced *serious* physical pain or injury. That is so, because the state failed to provide sufficient evidence from which a jury could find that the pain or injury was sufficiently severe based on its "intensity, duration, or consequences." *See Drown*, 245 Or App at 464.

First, the state offered no evidence about the intensity of C's pain or injury. As previously stated, a jury could infer from the state's evidence that C experienced some pain, but there was no evidence from which a jury could infer that the condition of C's skin was more serious or painful than an ordinary case of diaper rash. Second, there was no evidence of the duration of the pain or injury; there is nothing in the record from which a jury could discern when C's raw and inflamed skin first developed or for how long it persisted. Third, the state presented no evidence about the actual or potential consequences of C's condition; there was no evidence from which a jury could infer that C's rash created a risk that he might develop any other health conditions in the future or what sort of treatment it would require. Thus, the state failed to prove that defendant withheld care for a condition that caused or was likely to cause C to suffer serious physical pain or injury.

The state also argues that there was sufficient evidence to show that defendant failed to maintain C's hygiene by repeatedly failing to change C's diapers in a timely manner and, therefore, failed to protect C from a risk of future bodily harm. Repeatedly failing to timely change a child's diapers could violate ORS 163.205(1)(a) if a defendant failed to maintain the child's hygiene as necessary to protect the child from a risk of infection, illness, or other future bodily harm to the child. *See Baker-Krofft*, 348 Or at 667 n 5. Here, however, the state did not present evidence from which a jury could find that defendant failed to timely change C's diapers on more than one occasion, and the evidence of a single untimely diaper change was not sufficient to allow a jury to find that defendant engaged in a course of conduct in which he failed to protect C from a risk of future bodily harm.

The state contends that, although there was no direct evidence that defendant failed to timely change C's diapers more than once, the evidence of C's raw and inflamed skin would allow a jury to make that inference. We disagree. To begin with, the state did not present any medical evidence from which a jury could determine how long it takes for an inflammation like C's to develop, or whether the severity of C's inflammation suggested that it was likely caused by

repeated failures to change his diapers in a timely manner. Further, even if the state does not need expert testimony to prove the severity of a diaper rash, *see State v. Davis*, 351 Or 35, 55, 261 P3d 1197 (2011) (the Commentary to the Oregon Evidence Code states that "uncomplicated illness or injury" is a proper subject for lay opinion testimony), neither Gill nor Marelli opined that C's condition was abnormally severe or that it looked like it was caused by repeated failures to timely change C's diapers. Rather, Gill described the condition of C's skin and stated that it was a "concern," without further elaboration. Therefore, a jury could not infer that defendant had repeatedly failed to change C's diapers without engaging in impermissible speculation. *State v. Bivins*, 191 Or App 460, 467, 83 P3d 379 (2004) (although the state may rely on a jury drawing "reasonable inferences" from the evidence to sustain a conviction, "speculation and guesswork are not" permissible). Consequently, there was insufficient evidence for a jury to find that defendant engaged in a course of conduct in which he failed to adequately maintain C's hygiene.

In sum, there was insufficient evidence from which a rational trier of fact could find that defendant withheld "necessary and adequate" physical care within the meaning of ORS 163.205(1)(a)—whether measured as a failure to care for an existing condition or to protect against a risk of future harm—in failing to timely change C's diaper on the day of the incident. Thus, the trial court erred in denying defendant's motion for judgment of acquittal.

Conviction for criminal mistreatment on Count 1 reversed; remanded for resentencing; otherwise affirmed.