**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PIERRE NICHOLAS MALILIA, aka
David Fox,
                    *Petitioner,*

            v.

ERIC H. HOLDER JR., Attorney
General,
                    *Respondent.*

No. 05-77397

Agency No.
A029-554-456

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
October 6, 2010—San Francisco, California

Filed February 3, 2011

Before: Robert R. Beezer, Andrew J. Kleinfeld, and
Susan P. Graber, Circuit Judges.

Opinion by Judge Beezer

---

## COUNSEL

Thomas K. Ragland, Duane Morris LLP, Washington, D.C., for the petitioner.

Jesse M. Bless, Trial Attorney, Office of Immigration Litigation Civil Division, U.S. Department of Justice, Washington, D.C., for the respondent.

---

## OPINION

BEEZER, Circuit Judge:

Pierre Nicholas Malilia ("Malilia") petitions for review of two decisions by the Board of Immigration Appeals ("BIA"). First, Malilia argues that a conviction for improper delivery of a firearm is not a deportable firearms offense under 8 U.S.C. § 1227(a)(2)(C). Second, Malilia appeals the immigration judge's ("IJ") decision to deny Malilia's request for a continuance while his I-130 application was pending.

We dismiss Malilia's first ground for appeal for lack of jurisdiction, because a conviction for improper delivery of a firearm is a deportable offense. However, we conclude that the IJ abused his discretion in denying Malilia's continuance request, because the IJ failed to follow the BIA's guidelines when considering the request.

Accordingly, we dismiss in part, grant in part, and remand to afford Malilia an opportunity to apply for adjustment of status based on his now approved I-130.

I

Malilia is a native and citizen of Malta who was admitted as a lawful permanent resident of the United States on July 22, 1991. On March 1, 1993, Malilia pleaded guilty to delivering a package containing firearms, in violation of 18 U.S.C. § 922(e). Malilia's plea agreement stipulated the following facts: (1) Malilia "knowingly and willfully delivered a crate or package containing approximately 80 firearms" to the Sky Harbor International Airport in Phoenix, Arizona; (2) Malilia "marked the package as containing machine parts" and falsified a receipt; (3) Malilia "presented this crate or package to the airline as machinery parts" to ship to Malta; (4) Malilia intended to ship the package "to a person who was not licensed as a firearms dealer, manufacturer, or importer"; and (5) Malilia did not give TWA Airlines written notice that the package contained firearms. Pursuant to Malilia's plea arrangement, the district judge sentenced Malilia to 12 months' probation.

On December 30, 2002, the Immigration and Naturalization Service[1] issued Malilia a Notice to Appear, alleging that Malilia was removable under 8 U.S.C. § 1227(a)(2)(C) because of the firearms conviction. While removal proceedings were pending, Malilia married Ms. Vilaykone Southasarn, a United States citizen, who immediately filed an I-130 Adjustment of Status Application on Malilia's behalf. Malilia requested that the IJ grant Malilia a continuance to afford USCIS the time to adjudicate the pending I-130 application.

On August 12, 2004, the IJ issued an oral judgment, ruling that Malilia's conviction was a removable offense and denying Malilia's oral request for a continuance. The IJ provided two reasons for denying the continuance. First, the IJ stated

---

[1] The INS ceased to exist on March 1, 2003, and its functions were transferred to U.S. Citizenship and Immigration Services ("USCIS"), part of the newly formed Department of Homeland Security ("DHS").

that Malilia's marriage to a U.S. citizen was "subject to a presumption [that the marriage] was entered into for the purpose of obtaining an immigration benefit." Second, the IJ could not "justify delaying [Malilia's] removal proceeding for an unpredictable period of time, certainly involving months, perhaps involving years" waiting for USCIS to adjudicate the I-130. Id.

Malilia appealed to the BIA, which issued an opinion affirming the IJ. The BIA held that because "possession" is a necessary element of "delivery," Malilia's conviction was a removable offense. The BIA also agreed with the IJ that there was a "presumption that the marriage was not entered into in good faith." Following the BIA's decision, Malilia filed a Petition for Review with this court. Shortly thereafter, USCIS determined that Malilia's marriage to Ms. Southasarn was bona fide and approved the couple's I-130 application.

## II

**[1]** The parties dispute whether we have jurisdiction to consider either of Malilia's claims. When a petitioner's conviction is a deportable firearms offense under 8 U.S.C. § 1227(a)(2)(C), this court does not have jurisdiction to consider challenges to removal orders based on that conviction. 8 U.S.C. § 1252(a)(2)(C).[2] In other words, an alien who is convicted of a firearms offense covered by § 1227 is deportable and is not entitled to an appeal. *Valerio-Ochoa v. INS*, 241 F.3d 1092, 1094 (9th Cir. 2001). However, we still have

---

[2]Section 1252(a)(2)(C) reads as follows:

> Notwithstanding any other provision of law . . . no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) or 1227(a)(2)(A)(iii), (B), (C), or (D) of this title for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 1227(a)(2)(A)(i) of this title.

jurisdiction to determine our own jurisdiction. *Id.* We also have jurisdiction over questions of law. 8 U.S.C. § 1252(a)(2)(D).

Federal courts afford the BIA substantial deference when the BIA interprets a statute that it is charged with administering. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 446-48 (1987) (citing *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984)). However, when reviewing a removal decision, federal courts owe no deference to the BIA's interpretation of a criminal statute. *Marmolejo-Campos v. Holder*, 558 F.3d 903, 907-08 (9th Cir.), *cert. denied*, 130 S.Ct. 1011 (2009). Where the BIA has determined that a particular criminal offense renders an alien removable, we review that determination de novo.

The government is incorrect to assert that the BIA's interpretation of § 1227 merits deference. The BIA is not just interpreting § 1227 when making the determination that delivery of firearms is a removable offense. To make that determination, the BIA must first interpret 18 U.S.C. § 922(e), a criminal statute, and *then* apply § 1227 to this interpretation. We review that initial interpretation of § 922(e) de novo, with no deference to the BIA's determination. *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999).

We review the IJ's denial of a continuance for an abuse of discretion. *Karapetyan v. Mukasey*, 543 F.3d 1118, 1121 (9th Cir. 2008).

### III

**[2]** Malilia pleaded guilty to knowingly delivering a firearm without first providing written notice to the carrier. 18 U.S.C. § 922(e).[3] At issue is whether Malilia's firearms

---

[3]Section 922(e) states in part:

offense renders him removable under 8 U.S.C. § 1227(a)(2)(C).[4]

Malilia argues that a conviction for improper delivery of a firearm under 18 U.S.C. § 922(e) does not qualify as a predicate firearms offense under § 1227 because the enumerated list does not mention delivery. Based on that fact, Malilia asserts that Congress did not intend to include "delivery" as a qualifying offense. But the history of § 1227 belies this claim. Congress intended the provision to apply broadly. Before 1990 the provision only listed two generic categories as bases for deportation: "possessing or carrying." 8 U.S.C.A. § 1251(a)(14) (1990). During the early 1990s Congress repeatedly expanded the list of deportable firearms offenses. Congress' first major revision added to the list of deportable offenses "purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying" any firearm illegally. Pub. L. No. 101-649, § 602(a)(2)(C) (1990). Four years later Congress added inchoate offenses to the list. *See* Immigration and Nationality Technical Corrections Act of 1994, Pub. L. No. 103-406, § 203(b) (1994). Each revision stretched the scope of deportable firearms offenses, closing gaps and expanding § 1227's reach.

---

It shall be unlawful for any person knowingly to deliver or cause to be delivered to any common or contract carrier for transportation or shipment in interstate or foreign commerce . . . any package or other container in which there is any firearm or ammunition without written notice to the carrier that such firearm or ammunition is being transported or shipped . . . .

[4]Section 1227(a)(2)(C) reads as follows:

Any alien who at any time after admission is convicted under any law of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying, or of attempting or conspiring to purchase, sell, offer for sale, exchange, use, own, possess, or carry, any weapon, part, or accessory which is a firearm or destructive device . . . in violation of any law is deportable.

**[3]** As we have previously stated, § 1227's

> comprehensive list of gerunds captures all varieties of conduct relating to firearms transactions. [Section 1227] includes inchoate as well as completed offenses, enumerating not only the sale, use, ownership, or possession of firearms, but also any attempt or conspiracy to do so. Finally, [section 1227] encompasses convictions "under any law" of engaging or attempting to engage in such transactions. This wide-ranging text evinces an expansive purpose — to render deportable those aliens that commit firearms offenses of any type.

*Valerio-Ochoa*, 241 F.3d at 1095 (quoting *Hall v. INS*, 167 F.3d 852, 855 (4th Cir. 1999)). For instance, § 1227 includes the following phrases: "any alien," "any time," "under any law," and "in violation of any law." 18 U.S.C. § 1227(a)(2)(C). This repetitive use of unqualified language demonstrates Congress' intent to embrace the panoply of firearms offenses. *Valerio-Ochoa*, 241 F.3d at 1095. The Second and Fourth Circuits both agree with this reading. *Kuhali v. Reno*, 266 F.3d 93, 103 (2d Cir. 2001); *Hall*, 167 F.3d at 855.

**[4]** However, it is true that § 922 clearly regulates the delivery of *both* firearms and ammunition. Because only the improper delivery of *firearms* would constitute a removable offense, a violation of § 922 is not *categorically* a removable offense. For instance, improperly delivering ammunition would not render an alien removable under § 1227. In circumstances in which the criminal statute is categorically overbroad, we proceed to a modified categorical approach. In addition to the statute of conviction, we consider " 'a narrow, specified set of documents that are part of the record of conviction,' " to determine whether the defendant was convicted of the necessary elements of the generic crime. *Suazo Perez v. Mukasey*, 512 F.3d 1222, 1226 (9th Cir. 2008) (quoting *Tokatly v. Ashcroft*, 371 F.3d 613, 620 (9th Cir. 2004)). These

documents include the indictment, the judgment of conviction, the jury instructions, a signed guilty plea, and the transcript from the plea proceedings. *Tokatly*, 371 F.3d at 620.

**[5]** In particular, when determining whether a guilty plea admits the necessary elements of the generic offense, a modified categorical inquiry is limited "to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard v. United States*, 544 U.S. 13, 26 (2005). The issue here is not whether *every* guilty plea under § 922 demonstrates (or encompasses) exchange, possession, sale, or use of firearms, but rather whether Malilia's *particular* guilty plea constitutes a violation of "any law" prohibiting exchange, possession, sale, or use of firearms. The record of conviction demonstrates that Malilia "knowingly and willfully delivered" 80 firearms in violation of 18 U.S.C. § 922(e).

**[6]** Malilia asserts that his conviction is not a removable offense because § 922 criminalizes only improper delivery. Essentially, Malilia argues that, because delivery is not possession, a conviction for delivery is not a predicate offense under § 1227. But to establish the elements of a § 922 violation, the government must prove that the defendant had actual or constructive possession of the firearm. As the Second Circuit has commented, "the power to send or take a commodity out of the country necessarily implies — because of the exercise of dominion or control — at least constructive possession of the commodity." *Kuhali*, 266 F.3d at 105. Possession is a necessary part of delivery. "[I]t would be incongruous to read the statute to encompass the possession or carrying of firearms when committed as crimes in their own right, but not when committed as necessary elements of other crimes." *Id.* at 103.

Congress did not write the law so that an alien who unlawfully possesses a firearm may be removed while an alien who

possesses a firearm and then unlawfully delivers that firearm may not be removed.

The Supreme Court dealt with a similar issue in *United States v. Bass*, 404 U.S. 336 (1971). In *Bass*, the Court considered a statute that imposed criminal sanctions on a person who "receives, possesses, or transports in commerce or affecting commerce . . . any firearm." *Id.* at 337 (internal quotation marks omitted). The question was whether a conviction for possession alone would require further proof that the firearm had been "in commerce or affecting commerce." *Id.* at 339. The Court said that the conviction would require further proof, reasoning that "[s]ince virtually all transportations, whether interstate or intrastate, involve an accompanying possession or receipt, it is odd indeed to argue that on the one hand the statute reaches all possessions and receipts, and on the other hand outlaws only interstate transportations." *Id.* at 340-41. The *Bass* Court concluded that establishing possession does not, without more, prove that a firearm traveled interstate, but establishing that a firearm traveled interstate necessarily requires some element of possession. *See id.* at 340-41, 350-51.

**[7]** In the same way that transportation in *Bass* included an element of possession, Malilia's delivery necessarily required some form of possession, which means that Malilia's conviction renders him removable under 8 U.S.C. § 1227(a)(2)(C).

**[8]** We therefore dismiss Malilia's first challenge for lack of jurisdiction. *Valerio-Ochoa*, 241 F.3d at 1094. This, however, does not mean that we cannot consider Malilia's separate challenge that the IJ's denial of Malilia's request for a continuance was based on an error of law. We retain jurisdiction to review errors of law pursuant to 8 U.S.C. § 1252(a)(2)(D).

IV

**[9]** Malilia's second claim is that the IJ abused his discretion when the court denied Malilia's request for a continu-

ance. Malilia had requested the continuance to afford USCIS the opportunity to adjudicate an I-130 filed by Malilia's wife. Approval of an I-130 enables an alien in removal proceedings to apply for adjustment of status to lawful permanent resident. Even an alien who is removable for a firearms conviction is eligible for adjustment of status if the alien presents an approved I-130. *See In re Rainford*, 20 I. & N. Dec. 598, 602 (B.I.A. 1992).

The IJ denied Malilia's request for a continuance for two reasons. First, the IJ stated that Malilia's marriage was subject to a "presumption" that the marriage was entered into in bad faith. Second, the IJ stated that the DHS approval process could take years, and that the immigration court could not justify a long delay in the proceedings. The IJ's first justification is well-grounded in legislative history and precedent. The second, however, constitutes reversible error.

**[10]** Malilia suggests that we distinguish between "burden of proof" and "presumption." However, a heightened burden of proof creates a rebuttable presumption. *In re Aurthur*, 20 I. & N. Dec. 475 (B.I.A. 1992), *modified on other ground by In re Velarde*, 23 I. & N. Dec. 253 (B.I.A. 2002). Malilia had the burden of proof to show, through "clear and convincing evidence," that his marriage was not fraudulent. Therefore, the IJ did not make an error of law in characterizing Malilia as presumptively not entitled to an adjustment of status.

The legislative history supports this holding. Traditionally, the Immigration and Nationality Act ("INA") has granted special rights to an alien who is married to a U.S. citizen or lawful permanent resident. In 1986, Congress enacted several amendments to the INA in an effort to deter fraud by aliens seeking to adjust their status based upon their marriage to a United States citizen or lawful permanent resident. *In re Arthur*, 20 I. & N. Dec. at 478. One such amendment precluded an alien from adjusting his status based on a marriage entered into during removal proceedings unless the alien

resided outside the United States "for a 2-year period begin-
ning after the date of the marriage." Immigration Marriage
Fraud Amendments of 1986, Pub. L. No. 99-639, § 5(a) (codi-
fied as amended at section 245(e) of the INA, 8 U.S.C.
§ 1255(e)(1)-(2) (2006)). The provision was not only easy to
administer, but was also very effective at screening out sus-
pect marriages, because *every* marriage entered into during
removal proceedings fell within its scope.

However, critics began to note that the provision's exceed-
ingly broad applicability unnecessarily excluded from adjust-
ment aliens whose marriages *were* bona fide, "with obvious
resulting hardship to citizens and lawful permanent residents
of this country." *In re Velarde-Pacheco*, 23 I. & N. at 258
(Holmes, Board Member, concurring). Congress responded
with additional amendments in 1990, including an exception
to the 2-year bar for those aliens who could establish "by
clear and convincing evidence . . . that the marriage was
entered into in good faith and . . . was not entered into for the
purpose of procuring the alien's entry as an immigrant."
Immigration Act of 1990, Pub. L. No. 101-649, § 702(a) (cod-
ified as amended at section 245(e)(3) of the INA, 8 U.S.C.
§ 1255(e)(3) (2006)). *See also Melnitsenko v. Mukasey*, 517
F.3d 42, 48-49 (2d Cir. 2008); *Conteh v. Gonzales*, 461 F.3d
45, 64-65 (1st Cir. 2006).

**[11]** Because Congress first enacted an absolute bar to
adjustment of status based on a marriage entered into during
removal proceedings, and then enacted an exception to this
bar with a heightened evidentiary burden to establish the bona
fides of the marriage, the BIA reasoned that "Congress rather
clearly created a presumption that marriages contracted after
the institution of exclusion or deportation proceedings are
fraudulent." *In re Arthur*, 20 I. & N. at 478-479. Given this
legislative history, it appears that Congress's intent in amend-
ing the marriage fraud provisions was to provide aliens who
marry during removal proceeds "one opportunity to present
clear and convincing evidence that their marriage is bona

fide." *In re Velarde-Pacheco*, 23 I. & N. Dec. at 257. Absent a showing of clear and convincing evidence, the marriage is presumed fraudulent. *In re Arthur*, 20 I. & N. at 479.

**[12]** Though Malilia would have us characterize the heightened burden of proof on the alien as something different from a presumption, it is not. All a presumption does, if it is rebuttable, as this one is, is to establish which side has the burden of proof. In this case, the burden of proof is heightened by the "clear and convincing evidence" requirement. Therefore, the IJ did not make an error of law in characterizing Malilia's marriage as presumptively fraudulent.

**[13]** Second, Malilia's continuance request was denied partly because the IJ speculated that the approval process could take months or even years. But delays in the USCIS approval process are no reason to deny an otherwise reasonable continuance request. As we have stated before, basing a denial on such grounds is akin to "blaming a petitioner for an administrative agency's delay." *Ahmed v. Holder*, 569 F.3d 1009, 1013 (9th Cir. 2009). Malilia should not have to bear the ultimate cost for USCIS's inefficiencies. If approval can wait, then surely removal can also wait. There is no evidence that Malilia was dangerous or that Malilia needed to be removed quickly. In fact, the government waited nearly 10 years before serving Malilia with a Notice to Appear. In that context, one continuance to afford USCIS the opportunity to adjudicate a pending I-130 application is surely reasonable.

Although it came down subsequently, the BIA decision in *In re Hashmi* informs us of the standards the agency has approved for discretion in such a matter. 24 I. & N. 785 (B.I.A. 2009). The facts in *In re Hashmi* are similar to the facts at issue here. In *In re Hashmi* the respondent was in removal proceedings and had asked the IJ for a series of continuances to allow DHS to process a pending I-130 application. *Id*. at 786. The IJ granted four continuances over a 13-month period while USCIS considered the I-130. But the I-

130 adjudication process dragged on with numerous delays because at certain points DHS did not have the file, and at other points USCIS did not have the file. *Id.* Owing to these delays, respondent sought a fifth continuance, which DHS did not oppose. *Id.* Nevertheless, the IJ denied the request, explaining "that he was expected to complete cases in a reasonable period of time by meeting certain 'case completion goals' set by the Department of Justice." *Id.* The BIA affirmed the IJ's decision to deny the continuance.

The Third Circuit, however, reversed. *Hashmi v. Att'y Gen. of U.S.*, 531 F.3d 256 (3d Cir. 2008). The Third Circuit pointed out that Hashmi "ha[d] been mired in a bureaucratic morass caused by the government's failure to ensure that necessary information about his case ha[d] been available to both those adjudicating his removal proceedings and those adjudicating his I-130 petition." *Id.* at 258. The court also noted that a "ruling in favor of the government here would leave DHS with no incentive to fix its procedures to avoid such a situation in the future and would allow the deportation of similarly-situated individuals, who may well be entitled to an adjustment of status, simply because [of agency delay]." *Id.* at 261-62.

On remand, the BIA articulated five factors that an IJ should consider when determining whether to continue proceedings to afford the respondent an opportunity to apply for adjustment of status premised on a pending visa petition. The factors are: "(1) the DHS response to the motion; (2) whether the underlying visa petition is prima facie approvable; (3) the respondent's statutory eligibility for adjustment of status; (4) whether the respondent's application for adjustment [of status] merits a favorable exercise of discretion; and (5) the reason for the continuance and other procedural factors." *In re Hashmi*, 24 I. & N. Dec. at 790. These commonsense standards should be applied in this case.

**[14]** In *In re Hashmi* the BIA made clear that where DHS does not oppose the continuance, "the proceedings ordinarily

should be continued by the Immigration Judge in the absence of unusual, clearly identified, and supported reasons for not doing so." *Id.* at 791. Here, the IJ denied Malilia's continuance request, in part, because of agency delay, a reason that is hardly unusual, given the routine delays involved in the USCIS approval process. The BIA also emphasized that, when determining the reasons for the continuance, "a critical inquiry will revolve around which party is most responsible for the delay in the proceedings." *Id.* at 793. Much like the situation in *In re Hashmi*, the delays in adjudicating Malilia's I-130 stemmed primarily from USCIS. "Delay that is not attributable to the respondent augurs in favor of a continuance." *Id.*

**[15]** Moreover, *In re Hashmi* also holds that

> [f]actors relevant to determining whether a favorable exercise of discretion is warranted include, but are not limited to, the existence of family ties in the United States; the length of the respondent's residence in the United States; the hardship of traveling abroad; and the respondent's immigration history, including any preconceived intent to immigrate at the time of entering as a nonimmigrant.

*Id.* at 793. Malilia's long residence in the United States and his family ties in the United States both weighed substantially in his favor.

**[16]** Additionally, USCIS has since determined that Malilia's marriage was *not* entered into in bad faith and has *approved* the I-130. This means that the government now acknowledges that Malilia's marriage is bona fide, so Malilia would have been allowed to apply for an adjustment of status had the continuance been granted. *See Ahmed v. Holder*, 569 F.3d 1009, 1013 (9th Cir. 2009) (noting in a similar situation that had a continuance been granted to allow the adjudication of an ultimately successful I-140 "[the petitioner] could have

filed a Form I-485 to adjust his status to that of a permanent resident").

**[17]** It is generally an abuse of discretion to deny an unopposed request for a continuance where the delay is not attributable to the respondent and is needed solely so that an agency ruling likely to be determinative, already timely applied for, can be issued prior to removal.

**[18]** Because the IJ's decision to deny Malilia a continuance was an abuse of discretion, we reverse and remand to afford Malilia the opportunity to apply for adjustment of status based on the now-approved I-130 application.

DISMISSED in part, GRANTED in part, and REMANDED to the immigration court. Costs on appeal awarded to Petitioner.