FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EDGAR MURILLO-CHAVEZ,

*Petitioner*,

v.

PAMELA BONDI, Attorney
General,

*Respondent*.

Nos. 21-1422
23-1997

Agency No.
A097-765-117

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted August 22, 2024
Portland, Oregon

Filed February 13, 2025

Before: Evan J. Wallach, Morgan B. Christen, and Andrew
D. Hurwitz, Circuit Judges.[*]

Opinion by Judge Hurwitz

---

[*] The Honorable Evan J. Wallach, United States Senior Circuit Judge for
the Federal Circuit, sitting by designation.

## SUMMARY[**]

### Immigration

The panel denied Edgar Murillo-Chavez's petition for review of a decision of the Board of Immigration Appeals finding him ineligible for cancellation of removal and his petition for review of a decision of the BIA denying his motion to reopen based on a claim of ineffective assistance of counsel.

An immigration judge determined that Murillo, a lawful permanent resident (LPR), was removable for a firearms offense under 8 U.S.C. § 1227(a)(2)(C) due to his conviction for unlawful possession of a firearm in violation of O.R.S. § 166.250. Although the panel concluded that Murillo waived any challenge to that determination by failing to exhaust it before the BIA, the panel reached the merits because Murillo had argued in his motion to reopen that his counsel's failure to raise the issue before the BIA was ineffective assistance. The panel rejected that contention on the ground that Murillo could not establish prejudice because the IJ's determination was correct. The panel explained that, although O.R.S. § 166.250 is overbroad (some subsections cover antique firearms, while the federal definition of "firearm" excludes them), it is divisible, and Murillo was convicted under a subsection that covers only non-antiques and thus categorically matches the federal definition.

As to cancellation of removal, Murillo's eligibility turned on his convictions for unlawful use of a weapon in

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

violation of O.R.S. § 166.220(1)(a) and first-degree criminal mistreatment in violation of O.R.S. § 163.205, both of which the BIA found to be crimes involving moral turpitude (CIMTs). To be eligible for cancellation, an LPR like Murillo must establish, among other things, seven years continuous presence after having been "admitted in any status," 8 U.S.C. § 1229b(a)(2). However, the commission of certain offenses, including CIMTs, stops the accrual of that presence.

To determine whether Murillo's offenses cut off that presence, the panel addressed the threshold issue of when he was "admitted in any status." He argued it was when he obtained special immigrant juvenile (SIJ) status in 2010, and he claimed that prior counsel was ineffective for not establishing before the IJ that he committed his use of a weapon offense more than seven years after gaining that status. However, the panel concluded that Murillo was not admitted until he attained LPR status in 2011, applying Supreme Court and Circuit precedent to conclude that SIJ status does not confer an "admission." As a result, the panel concluded that any error by counsel as to the date of the offense did not prejudice Murillo, as the actual date was within seven years of his admission. The panel observed that Murillo's criminal mistreatment offense also occurred within seven years of his admission, and therefore, he could establish eligibility for cancellation only if neither of those offenses is a CIMT.

The panel concluded that Murillo's criminal mistreatment offense was a CIMT that cut off his physical presence. Under O.R.S. § 163.205(1)(a), someone commits criminal mistreatment if the person has a legal duty to provide care for another (or has assumed care, custody or responsibility for another), and intentionally or knowingly

withholds necessary and adequate food, physical care, or medical attention. Murillo argued that O.R.S. § 163.205(1)(a) is not categorically a CIMT because it does not require a showing of injury to the victim or a specific intent to do so. Looking to Oregon case law, the panel concluded that the BIA was correct that all violations of the statute would cause a significant level of harm to any victim. The panel also rejected Murillo's argument that Oregon courts have applied the statute to non-turpitudinous conduct. As to Murillo's argument that it is not a CIMT because it only requires proof that that the defendant acted "knowingly," not with a specific intent to cause harm, the panel held that knowing conduct is sufficient.

## COUNSEL

Rachel Game (argued), Game Immigration Law PC, Portland, Oregon, for Petitioner.

Craig A. Newell, Jr. (argued), Senior Litigation Counsel, Criminal Immigration Team, Office of Immigration Litigation, Civil Division; Lindsay B. Glauner, Senior Litigation Counsel; Brian M. Boynton, Principal Deputy Assistant Attorney General, Civil Division; United States Department of Justice, Washington, D.C., for Respondents.

## OPINION

HURWITZ, Circuit Judge:

A lawful permanent resident ("LPR") can be removed if convicted of certain crimes. *See* 8 U.S.C. § 1227(a)(2). However, the same LPR may be eligible for cancellation of removal if not convicted of "a crime involving moral turpitude" ("CIMT") within seven years of admission. *See* 8 U.S.C. § 1182(a)(2)(A)(i)(I); *id*. § 1229b(a)(2), (d)(1)(B). The ultimate issue in this case is whether one of the crimes for which petitioner Edgar Murillo-Chavez was convicted in Oregon state court in 2018 is a CIMT. We conclude that Murillo's conviction under Oregon Revised Statutes ("O.R.S.") § 163.205(1)(a) for first-degree criminal mistreatment is for a CIMT and that he is ineligible for cancellation of removal under 8 U.S.C. § 1229b(a). We therefore deny his petitions for review.

## I.

Murillo, a native and citizen of Mexico, entered the United States as a young child without being admitted or paroled. In 2010, he was granted status as a special immigrant juvenile ("SIJ"). In 2011, Murillo became an LPR.

In 2016, Murillo pleaded no contest in Oregon state court to unlawful possession of a firearm in violation of O.R.S. § 166.250. In 2018, he was convicted of two other crimes: (1) unlawful use of a weapon in violation of O.R.S. § 166.220(1)(a), for which he was sentenced to 10 months of incarceration, and (2) first-degree criminal mistreatment in violation of O.R.S. § 163.205, for which he was sentenced

to 31 months.[1]  The original judgment for the unlawful use conviction stated that Murillo committed the offense on or about July 31, 2017.  The criminal mistreatment offense occurred on or about January 10, 2018.

In January 2021, the Department of Homeland Security served Murillo with a Notice to Appear charging him as removable under 8 U.S.C. § 1227(a)(2)(C) because of his 2016 conviction for unlawful possession of a weapon. Murillo was served with a second notice in March 2021, which charged him as removable under 8 U.S.C. § 1227(a)(2)(A)(ii) for conviction of two CIMTs not arising from a single scheme of criminal misconduct, based on 2018 convictions for unlawful use of a weapon and first-degree criminal mistreatment.

An Immigration Judge ("IJ") sustained both charges of removability, determining that the 2016 conviction qualified as a firearms offense under § 1227(a)(2)(C) and that the two 2018 convictions qualified as CIMTs under § 1227(a)(2)(A)(ii).  Murillo then sought cancellation of removal under 8 U.S.C. § 1229b(a).  In opposition, the government argued that Murillo was ineligible for cancellation because he had committed a CIMT within seven years of admission.  *See* 8 U.S.C. § 1229b(a)(2), (d)(1)(B). The IJ agreed.  Assuming arguendo that Murillo was admitted on August 31, 2010, when he obtained SIJ status, rather than when he later became an LPR, the IJ held that Murillo could not establish the requisite seven years of post-admission continuous residence without commission of a

---

[1] Murillo was also convicted of assault in the third degree in violation of O.R.S. § 163.165(2)(a), for which he was sentenced to a term of 45 months.  This conviction is not at issue in this case.

CIMT because he committed the unlawful use offense on July 31, 2017. *See* 8 U.S.C. § 1229b(a)(2), (d)(1)(B).

Murillo appealed to the BIA, challenging the IJ's decision to pretermit his application for cancellation of removal. The BIA dismissed the appeal, finding that both Oregon 2018 convictions were CIMTs committed within seven years of admission. In contrast to the IJ, the BIA treated Murillo's date of admission as May 27, 2011, when he adjusted to LPR status. Murillo timely petitioned for review.

Murillo then retained new counsel and moved in the BIA for reopening. His motion argued that former counsel provided ineffective assistance by, among other things: (1) failing to notice a discrepancy between the offense dates given on the original judgment for his unlawful use of a weapon conviction and a stipulated amended indictment, which listed the date of the offense as September 1, 2017; and (2) failing to argue to the BIA that the 2016 unlawful possession offense was not a deportable firearms offense.

The BIA denied the motion to reopen. Adhering to its prior determination that Murillo was not admitted until he became an LPR, the BIA concluded that he could not demonstrate the requisite seven years of post-admission continuous residence even if the date of the unlawful use offense was September 1, 2017. Murillo again timely petitioned for review, and we consolidated his two petitions.

## II.

### A.

An LPR is removable if he has committed, at any time after admission: (1) "[c]ertain firearms offenses," 8 U.S.C.

§ 1227(a)(2)(C), **2** or (2) "two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct," 8 U.S.C. § 1227(a)(2)(A)(ii).**3** But, an LPR ordered removed may be eligible for cancellation of removal if he has (1) been "lawfully admitted for permanent residence for not less than 5 years"; (2) "resided in the United States continuously for 7 years after having been admitted in any status"; and (3) "not been convicted of any aggravated felony" during the seven-year period. 8 U.S.C. § 1229b(a)(1)–(3). A period of "continuous residence" is tolled by commission of "an offense referred to in [8 U.S.C. §] 1182(a)(2) . . . ." 8 U.S.C. § 1229b(d)(1)(B);**4** *see Barton*

---

**2** 8 U.S.C. § 1227(a)(2)(C) provides:

> Any alien who at any time after admission is convicted under any law of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying, or of attempting or conspiring to purchase, sell, offer for sale, exchange, use, own, possess, or carry, any weapon, part, or accessory which is a firearm or destructive device (as defined in section 921(a) of Title 18) in violation of any law is deportable.

**3** 8 U.S.C. § 1227(a)(2)(A)(ii) provides:

> Any alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial, is deportable.

**4** 8 U.S.C. § 1229b(d)(1) provides:

> For purposes of this section, any period of continuous residence or continuous physical presence in the United States shall be deemed to end (A) except in the case of an alien who applies for cancellation of removal under subsection (b)(2), when the

*v. Barr*, 590 U.S. 222, 230–31 (2020).  One such offense is "a crime involving moral turpitude."  8 U.S.C. § 1182(a)(2)(A)(i)(I).

**B.**

Although we generally lack jurisdiction to review removal orders based on criminal convictions, 8 U.S.C. § 1252(a)(2)(C), we retain jurisdiction to consider "constitutional claims or questions of law" raised in petitions for review challenging these orders and related orders denying motions to reopen removal proceedings, 8 U.S.C. § 1252(a)(2)(D); *Kucana v. Holder*, 558 U.S. 233, 253 (2010).  Whether a conviction constitutes a qualifying firearms offense or a CIMT is a question of law that we review *de novo*.  *See Malilia v. Holder*, 632 F.3d 598, 602 (9th Cir. 2011); *Mendoza v. Holder*, 623 F.3d 1299, 1302 (9th Cir. 2010).

**III.**

**A.**

The IJ found Murillo removable for commission of: (1) a qualifying firearms offense, and (2) two or more CIMTs not arising out of a single scheme of criminal misconduct. Murillo attacks both findings in this Court.

The government contends that Murillo waived any argument that he was removable for having committed a qualifying firearms offense by failing to raise the issue to the

---

alien is served a notice to appear under section 1229(a) of this title, or (B) when the alien has committed an offense referred to in section 1182(a)(2) of this title that renders the alien inadmissible to the United States under section 1182(a)(2) of this title or removable from the United States under section 1227(a)(2) or 1227(a)(4) of this title, whichever is earliest.

BIA.  Under 8 U.S.C. § 1252(d)(1), "a noncitizen who seeks to challenge an order of removal in court must first exhaust certain administrative remedies."  *Santos-Zacaria v. Garland*, 598 U.S. 411, 413 (2023).  "Exhaustion requires a non-constitutional legal claim to the court on appeal to have first been raised in the administrative proceedings below, and to have been sufficient to put the BIA on notice of what was being challenged."  *Umana-Escobar v. Garland*, 69 F.4th 544, 550 (9th Cir. 2023) (cleaned up).  Although the exhaustion requirement is non-jurisdictional, *see Santos-Zacaria*, 598 U.S. at 419, we must apply it when, as here, it is invoked by the government, *see Umana-Escobar*, 69 F.4th at 550.

We agree with the government that Murillo waived any challenge to the IJ's firearms-offense removability finding by failing to raise it in his appeal to the BIA.  Indeed, Murillo's motion to reopen conceded as much, arguing that prior counsel's failure to "include any argument that the Immigration Judge erred in finding Mr. Murillo Chavez's 2016 Unlawful Possession of a Weapon was a deportable firearm offense" constituted ineffective assistance.  That is an accurate characterization of Murillo's appellate briefing to the BIA, which challenged only the IJ's finding of ineligibility for cancellation of removal and argued that none of the crimes cited by the IJ was a CIMT.

Given Murillo's failure to exhaust an argument about the whether the firearms offense rendered him removable, we find no error in the removal order.  We therefore turn to Murillo's argument that the BIA erred in denying the motion to reopen because he was denied due process by prior counsel's ineffective assistance.  We review due process claims based on ineffective assistance of counsel *de novo*.

*Mohammed v. Gonzales*, 400 F.3d 785, 791–92 (9th Cir. 2005) (citations omitted).

## B.

To establish ineffective assistance, Murillo must show both that counsel performed incompetently and that he was thereby prejudiced, meaning that counsel's performance "may have affected the outcome of the proceeding." *Id*. at 793–94 (cleaned up). We find that Murillo cannot establish prejudice arising from counsel's failure to contest the IJ's determination that his 2016 conviction for unlawful possession of a weapon was a removable firearms offense, because that holding was correct.[5]

We review *de novo* whether a conviction is for a qualifying firearms offense, *see Malilia*, 632 F.3d at 602, applying the categorical approach set forth in *Taylor v. United States*, 495 U.S. 575 (1990). *See Robles-Urrea v. Holder*, 678 F.3d 702, 707 (9th Cir. 2012). The categorical approach involves a "two-step framework." *Rivera v. Lynch*, 816 F.3d 1064, 1070 (9th Cir. 2016). First, we identify the elements of the state statute of conviction. *Coquico v. Lynch*, 789 F.3d 1049, 1051 (9th Cir. 2015). Second, we compare the elements to the generic definition of the offense and decide "whether the conduct proscribed in the statute is broader than, and so does not categorically fall within, this generic definition." *Turijan v. Holder*, 744 F.3d 617, 620 (9th Cir. 2014) (citation omitted).

---

[5] We therefore need not address whether Murillo was also removable for having committed *two* CIMTs. We address in Section IV.C. below whether *either* of the 2018 convictions constituted a CIMT making Murillo ineligible for cancellation of removal.

If the conduct proscribed by a state statute of conviction is facially broader than the federal definition of a removable offense, we next determine whether the state statute is "divisible." *See Descamps v. United States*, 570 U.S. 254, 261–62 (2013).   Divisible statutes "list elements in the alternative, and thereby define multiple crimes." *Mathis v. United States*, 579 U.S. 500, 505 (2016).   If the statute is divisible, we then apply a "modified" categorical approach, in which we can review documents like indictments and convictions to determine the specific crime of conviction. *Id.* at 505–06.

Several subsections of O.R.S. § 166.250 prohibit conduct involving antique firearms.   *See, e.g.*, O.R.S. § 166.460(2).   In contrast, the federal definition of "firearm" excludes antiques.   18 U.S.C. § 921(a)(3); *see Medina-Lara v. Holder*, 771 F.3d 1106, 1115 (9th Cir. 2014).   Murillo therefore correctly argues that O.R.S. § 166.250 is facially broader than the generic offense in 8 U.S.C. § 1227(a)(2)(C).

We find, however, that O.R.S. § 166.250 prohibits a disjunctive set of offenses and is therefore divisible.**[6]** *See*

---

[6] O.R.S. § 166.250(1) provides that "a person commits the crime of unlawful possession of a firearm" if he or she knowingly:

> (a)  Carries any firearm concealed upon the person;
> (b)  Possesses a handgun that is concealed and readily accessible to the person within any vehicle; or
> (c)  Possesses a firearm and:
>      (A) Is under 18 years of age;
>      (B)(i) While a minor, was found to be within the jurisdiction of the juvenile court for having committed an act which, if committed by an adult, would constitute a felony or a misdemeanor involving violence, as defined in ORS 166.470; and

*Mathis*, 579 U.S. at 506. This disjunctive nature of the statute strongly "suggests that the legislature created" multiple discrete offenses within a single statute. *Diego v. Sessions*, 857 F.3d 1005, 1013 (9th Cir. 2017); *see also Mathis*, 579 U.S. at 518 (stating "a statute on its face may resolve" the divisibility issue). Moreover, Oregon state court decisions and jury instructions treat violations of the various subsections of § 166.250 as separate crimes. *See, e.g.*, *State v. Clemente-Perez*, 359 P.3d 232, 235 (Or. 2015) (en banc) (conviction under subsection (1)(b)); *State v. Schodrow*, 66 P.3d 547, 548 (Or. Ct. App. 2003) (conviction under subsection (1)(a)); *see also* Or. Unif. Crim. Jury Instructions 2407, 2410, 2411 (separate instructions for subsections (1)(a), (1)(b), and (1)(c)). Divisibility is not vitiated simply because each subsection carries with it the

---

(ii) Was discharged from the jurisdiction of the juvenile court within four years prior to being charged under this section;

(C) Has been convicted of a felony;

(D) Was committed to the Oregon Health Authority under ORS 426.130;

(E) Was found to be a person with mental illness and subject to an order under ORS 426.130 that the person be prohibited from purchasing or possessing a firearm as a result of that mental illness;

(F) Is presently subject to an order under ORS 426.133 prohibiting the person from purchasing or possessing a firearm;

(G) Has been found guilty except for insanity under ORS 161.295 of a felony; or

(H) The possession of the firearm by the person is prohibited under ORS 166.255; or

(d) Possesses an unfinished frame or receiver and is prohibited from possessing firearms under paragraph (c) of this subsection.

same punishment.  *See United States v. Jones*, 951 F.3d 1138, 1140 (9th Cir. 2020).

Importantly, not all subsections of O.R.S. § 166.250 apply to antique firearms.[7]   The relevant state court documents show that Murillo was convicted under subsection (1)(b), for possessing a handgun "concealed and readily accessible to the person within any vehicle."  That subsection prohibits only the unlawful possession of non-antiques and thus categorically matches the federal generic definition.   *See* 8 U.S.C. § 1227(a)(2)(C); 18 U.S.C. § 921(a)(3).

Murillo's conviction under O.R.S. § 166.250(1)(b) is therefore a qualifying firearms offense making him removable under 8 U.S.C. § 1227(a)(2)(C).   His former counsel's failure to raise that issue before the BIA did not prejudice him and the BIA therefore correctly rejected his motion to reopen on that ground.

## IV.

## A.

We next turn to Murillo's argument that the agency erred in finding him ineligible for cancellation of removal.  To be eligible, an LPR must have "resided in the United States continuously for 7 years after having been admitted in any status."  8 U.S.C. § 1229b(a)(2).  Commission of an offense listed in 8 U.S.C. § 1182(a)(2), which includes a CIMT, *see* 8 U.S.C. § 1182(a)(2)(A)(i)(I), stops the accrual of continuous residence.  8 U.S.C. § 1229b(d)(1)(B); *Barton*,

---

[7] O.R.S. § 166.460(1)–(2) provides that a person can violate O.R.S. § 166.250(1)(c)(B)–(D) and (G) through possession of an antique firearm, but that O.R.S. § 166.250 does not otherwise apply to antique firearms.

590 U.S. at 230–31. The "key date for purposes of calculating whether the noncitizen committed a § 1182(a)(2) offense during the initial seven years of residence" is the date of commission of the offense, rather than the date of conviction. *Barton*, 590 U.S. at 232.

A threshold question involves identifying Murillo's date of admission. The BIA held that Murillo was "admitted," and thus began continuous residence, when he adjusted to LPR status on May 27, 2011. The IJ noted that the Oregon unlawful use of a weapon offense was committed on July 31, 2017. Murillo argues that he was "admitted" to the United States when he obtained SIJ status, on August 31, 2010, as the IJ assumed, so that offense was outside the seven-year period. And, he claims that prior counsel was ineffective for not bringing to the attention of the IJ state court documents showing that the unlawful use offense was committed on September 1, 2017, more than seven years after the date he obtained SIJ status.

We agree with the BIA, however, that Murillo was not admitted until he attained LPR status. The Immigration and Nationality Act ("INA") defines "admission" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). SIJ status is a form of parole that confers eligibility for adjustment to LPR status to noncitizen minors who have been abused, abandoned, or neglected. *See* 8 U.S.C. § 1101(a)(27)(J)(i); *id.* § 1255(a), (h)(1); *see also* USCIS, *Special Immigrant Juveniles*, https://www.uscis.gov/working-in-US/eb4/SIJ (last updated January 8, 2025). In *Garcia v. Holder*, we concluded that a non-citizen was "admitted in any status" under § 1229b(a)(2) when granted SIJ status. 659 F.3d 1261, 1263, 1267–71 (9th Cir. 2011). Citing *Garcia*, Murillo argues that

the BIA erred in finding he was not admitted until he became an LPR.

But *Garcia* is no longer good law. *Garcia* relied on our prior opinion in *Garcia-Quintero v. Holder*, which held that acceptance into the Family Unity Program, which conferred protection from deportation and other benefits to qualifying aliens in order to "help families stay together while the beneficiaries adjust to LPR status," conferred a "status" that rendered aliens "admitted in any status" for purposes of eligibility for cancellation of removal under § 1229b(a)(2). 455 F.3d 1006, 1009–10, 1118–19 (9th Cir. 2006); *see also Garcia*, 659 F.3d at 1269. In *Hernandez v. Garland*, however, we held that *Sanchez v. Mayorkas*, 593 U.S. 409 (2021), "effectively overruled" *Garcia-Quintero*. 47 F.4th 908, 910 (9th Cir. 2022). In *Sanchez*, the Supreme Court held that "temporary protected status" ("TPS") under 8 U.S.C. § 1254a was not "admission" to the United States under 8 U.S.C. § 1255. 593 U.S. at 415–16. Using the definition of "admission" in 8 U.S.C. § 1101(a)(13)(A), the Supreme Court distinguished "lawful status," which TPS confers, *see* 8 U.S.C. § 1254a(f)(4), from the "lawful entry" required for admission. *See Sanchez*, 593 U.S. at 411, 415–16.

In light of *Sanchez*, *Hernandez* rejected the petitioner's argument that TPS status constituted admission for purposes of calculating whether he had established the seven years of continuous residence needed to be eligible for cancellation of removal. *See* 47 F.4th at 912–15. More importantly, we expressly recognized that "[o]ur precedent judicially expanding the statutory definition of admission based on the benefits conferred by a lawful status is clearly irreconcilable with *Sanchez*'s holding that lawful status and admission are distinct concepts in immigration law" and that "what matters

is what *Sanchez* held that TPS did not do—confer admission." *Id*. at 914 (cleaned up). We emphasized that § 1101(a)(13)(A)'s "definition of admission controls whether an alien is admitted for purposes of cancellation." *Id*. at 915.

Although Murillo contends that *Hernandez* was incorrectly decided, it controls our decision today. *Miller v. Gammie,* 335 F.3d 889, 899–900 (9th Cir. 2003) (en banc) (holding that a three-judge panel is bound by prior opinions). We therefore conclude that the BIA correctly found that Murillo was not admitted within the meaning of 8 U.S.C. § 1101(a)(13)(A) when he was granted SIJ parole but instead when he received LPR status on May 27, 2011. Any error by prior counsel in not establishing that the unlawful use offense occurred on September 1, 2017, therefore did not prejudice Murillo, as that date was within seven years of admission.

Murillo's first-degree criminal mistreatment offense, committed on or about January 10, 2018, also occurred within seven years of his admission. Murillo can establish the seven years of continuous residence required for eligibility for LPR cancellation of removal only if neither of his 2018 convictions is a CIMT. We therefore must decide whether either of those two Oregon offenses is a CIMT. We review *de novo* the BIA's finding that a crime is categorically a CIMT. *Ortiz v. Garland*, 25 F.4th 1223, 1226 (9th Cir. 2022).

**B.**

Both the BIA and this Court have long struggled with deciding whether a particular crime involves moral turpitude. *See, e.g.*, *Navarro-Lopez v. Gonzales*, 503 F.3d 1063 (9th Cir. 2007) (en banc); *Marmolejo-Campos v.*

*Holder*, 558 F.3d 903 (9th Cir. 2009) (en banc); *Ceron v. Holder*, 747 F.3d 773 (9th Cir. 2014) (en banc); *Ortega-Lopez v. Lynch*, 834 F.3d 1015 (9th Cir. 2016); *see also Marmolejo-Campos*, 558 F.3d at 921 (Berzon, J., dissenting) ("[T]he BIA's precedential case law regarding the meaning of the phrase 'crime involving moral turpitude' [] is a mess of conflicting authority."). This is likely because, as we have recognized, the phrase "moral turpitude," which is not defined in the INA, "is perhaps the quintessential example of an ambiguous phrase." *Orellana v. Barr*, 967 F.3d 927, 934 (9th Cir. 2020) (citation omitted). Given the phrase's ambiguity, we have in the past applied the deferential standard of *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), to the BIA's determination whether a crime was a CIMT. Under the *Chevron* rubric, we deferred to precedential BIA decisions interpreting the term and to non-precedential BIA decisions relying directly on those precedential decisions if those decisions were "reasonable," even if we might have reached different legal conclusions unburdened by *Chevron* deference. *See Marmolejo-Campos*, 558 F.3d at 911. But, in 2024, the Supreme Court overruled *Chevron*, instructing us to address agency interpretations of the law independently. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024).

*Loper Bright* allows us to continue to "look to agency interpretations for guidance," *Lopez v. Garland*, 116 F.4th 1032, 1036 (9th Cir. 2024), recognizing that the agency's "body of experience and informed judgment" may give those interpretations the "power to persuade," 603 U.S. at 388, 394, 402 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). However, they have only that power, and we "need not and under the APA may not defer to an agency

interpretation of the law simply because a statute is ambiguous." *Id.* at 413.

We have no precedential decision concerning whether either of the two Oregon statutes that Murillo was convicted of violating in 2018 is a CIMT. "When we have not previously considered whether the offense at issue is a CIMT, our most useful guidance often comes from comparing the crime with others that we have previously deemed morally turpitudinous." *Orellana*, 967 F.3d at 936 (internal quotation marks and citation omitted).

At least some of our prior decisions defining crimes as CIMTs were based on *Chevron* deference. After *Loper Bright*, those "prior cases that relied on the *Chevron* framework . . . are still subject to statutory *stare decisis* despite our change in interpretive methodology." 603 U.S. at 412. Thus, our holdings "that *specific* agency actions are lawful" were not overruled by *Loper Bright* simply because they relied on *Chevron*. *Id.* (emphasis added). But, given *Loper Bright*'s clear instruction that we otherwise need no longer defer to the agency's interpretation, we take the Supreme Court to mean that although the holdings of our prior cases in which *Chevron* deference was applied remain precedential until overruled, we are not compelled to use them as analytical building blocks in every case to determine whether the BIA correctly found, in the case before us, that a previously untreated crime is a CIMT. Rather, although the logic and reasoning in our prior decisions that relied on *Chevron* may aid us in determining whether a crime we have not previously confronted is a CIMT, just as we may be persuaded by the agency's analysis in the case before us, in the end we must exercise our "independent judgment," *see id.*, in deciding the present case. We therefore turn to that task.

## C.

A state crime of conviction is a CIMT "only if the full range of conduct encompassed by the statute, including the least egregious conduct" is a CIMT. *Flores-Vasquez v. Garland*, 80 F.4th 921, 925 (9th Cir. 2023) (cleaned up). The government asserts that application of the modified categorical approach establishes that O.R.S. § 163.205, the criminal mistreatment statute, is divisible; that Murillo was convicted under subsection (1)(a); and that his conviction under subsection (1)(a) is for a CIMT. O.R.S. § 163.205(1)(a) provides that someone commits criminal mistreatment in the first degree if:

> The person, in violation of a legal duty to provide care for another person, or having assumed the permanent or temporary care, custody or responsibility for the supervision of another person, intentionally or knowingly withholds necessary and adequate food, physical care or medical attention from that other person[.]

Murillo does not contest that the statute is divisible or that he was convicted under subsection (1)(a), but argues that the conduct prohibited by that subsection is broader than the generic definition of a CIMT.

Even before *Loper Bright*, we recognized that *Chevron* deference to the BIA's general definition of a CIMT often "has no practical significance" because the agency definition did not "particularize the term in any meaningful way." *Marmolejo-Campos*, 558 F.3d at 910 (internal quotation marks and citation omitted). Accordingly, we typically "relied on our own generalized definition" of the term, *id.*,

when *Chevron* deference did not apply. We begin our analysis today accordingly.

We have "traditionally divided" CIMTs into two types, defining them as "involving either fraud or base, vile, and depraved conduct that shocks the public conscience." *Ortiz*, 25 F.4th at 1227 (cleaned up). The fraud prong of the definition does not apply here. And, although there is no litmus test about whether a particular crime is "base, vile, and depraved," *see, e.g.*, *Navarro-Lopez*, 503 F.3d at 1075 (Reinhardt, J., concurring), we have stressed that "[n]on-fraudulent CIMTs will almost always involve an intent to injure someone, an actual injury, or a protected class of victims," *Turijan*, 744 F.3d at 621 (citation omitted).[8]

Murillo argues that first-degree criminal mistreatment in violation of O.R.S. § 163.205(1)(a) is not categorically a CIMT because it does not require a showing of injury to the victim or a specific intent to do so. We disagree. Interpreting the phrase "necessary and adequate," Oregon courts have stated that O.R.S. § 163.205 applies to defendants who "fail to provide for a dependent's most basic needs . . . for safety and survival." *State v. Hickey*, 373 P.3d 1246, 1250 (Or. Ct. App. 2016) (quoting *State v. Drown*, 263 P.3d 1057, 1066 (Or. Ct. App. 2011)). The Oregon courts accordingly have stated that its legislature intended § 163.205 to cover "cruel deprivations" and the withholding

---

[8] Judges Berzon and Fletcher have argued that the phrase "crime involving moral turpitude" is unconstitutionally vague. *See, e.g., Islas-Veloz v. Whitaker*, 914 F.3d 1249, 1251 (9th Cir. 2019) (Fletcher, J., concurring); *Barbosa v. Barr*, 926 F.3d 1053, 1060–61 (9th Cir. 2019) (Berzon, J., concurring). As a three-judge panel, however, we are bound by our decision in *Martinez-de Ryan v. Whitaker*, 909 F.3d 247, 252 (9th Cir. 2018), to the contrary. *See also Islas-Veloz*, 914 F.3d at 1250–51 (same).

of "absolutely required" care, *Drown*, 263 P.3d at 1066, and to apply when the defendant's acts created a "substantial risk" of "serious harm," *State v. Burciaga*, 328 P.3d 782, 787 (Or. Ct. App. 2014). The statute does not criminalize garden-variety negligence or the mere failure to be "exemplary parents." *State v. Baker-Krofft*, 239 P.3d 226, 232 (Or. 2010) (en banc); *compare Burciaga*, 328 P.3d at 782–83 (affirming conviction where defendant left her children in the care of an abusive boyfriend, and one child died), *with Hickey*, 373 P.3d at 1251–52 (reversing conviction where defendant failed to timely change child's diaper). The BIA therefore correctly concluded that "all violations of the statute would cause a significant level of harm to any victim of criminal mistreatment."

Citing *Drown*, Murillo argues that Oregon courts have applied O.R.S. § 163.205(1)(a) to non-turpitudinous conduct. In that case, the Oregon Court of Appeals affirmed the O.R.S. § 163.205(1)(a) conviction of a defendant who knowingly failed to seek vision care for her "legally blind" child. 263 P.3d at 1059. Testimony established that the child "could not see to read," and "it was obvious that [he] needed glasses." *Id.*

We find Murillo's argument unpersuasive. The conduct in *Drown*—knowingly depriving a blind dependent minor of the opportunity to see the world around him—plainly "violates accepted moral standards." *Maie v. Garland*, 7 F.4th 841, 847 (9th Cir. 2021) (cleaned up). It is one thing for a person to not realize that a dependent needs care, or to negligently fail to address a known need. It is quite another to knowingly or intentionally abandon a duty to provide for a blind dependent's basic health and safety.

Murillo also argues that an O.R.S. § 163.205(1)(a) conviction is not a CIMT because it only requires proof that that the defendant acted "knowingly," not with a specific intent to cause harm. But specific intent to cause harm "is not required for a crime to involve moral turpitude." *United States v. Santacruz*, 563 F.3d 894, 897 (9th Cir. 2009) (per curiam). Because Oregon first-degree criminal mistreatment requires at least knowing conduct, we conclude that it is a CIMT.[9]

## V.

We hold that first-degree criminal mistreatment in violation of O.R.S. § 163.205(1)(a) is a crime involving moral turpitude under 8 U.S.C. § 1182(a)(2)(A)(i)(I). Because Murillo committed this offense within seven years of being "admitted in any status" to the United States, he is ineligible for cancellation of removal under 8 U.S.C. § 1229b(a).

**PETITIONS FOR REVIEW DENIED.**

---

[9] Because 8 U.S.C. § 1229b(d)(1)(B) disqualifies an applicant who has committed a single CIMT from eligibility for cancellation of removal, we need not address whether Murillo's Oregon conviction for unlawful use of a weapon also constitutes a CIMT.